STATE OF NORTH CAROLINA v. JOHN WINFRED BAILEY

No. 8715SC780

(Filed 15 March 1988)

**1. Indictment and Warrant § 13.1— exact location of offense—bill of particulars—denial not prejudicial**

The trial court did not err in denying defendant's motion for a bill of particulars as to the exact location of an alleged offense of taking indecent liberties with a minor where defendant admits that he was aware prior to trial that the offense allegedly occurred on a farm in Chatham County; the victim testified that the offense occurred in a barn and on a certain road on the farm; defendant was given the opportunity to question the victim about the alleged offense prior to trial; and defendant did not suffer any prejudice in the preparation of his defense due to the lack of information as to exactly where on the farm the offense occurred.

**2. Criminal Law § 89.1; Rape and Allied Offenses § 4— expert testimony—why child would cooperate with abusing adult—admissibility**

Expert testimony by a social worker and a pediatrician as to why a child would cooperate with an adult who had been sexually abusing the child did not constitute testimony on a character trait of the child in violation of N.C.G.S. § 8C-1, Rule 405(a) or impermissible expert testimony regarding the credibility of the child; rather, such testimony was specialized knowledge admissible under N.C.G.S. § 8C-1, Rule 702. Furthermore, defendant opened the door to such testimony by cross-examining the child about going to the barn alone with defendant after she testified she was afraid of defendant and did not like to be alone with him.

**3. Criminal Law §§ 50.1, 89.1; Rape and Allied Offenses § 4— expert testimony that child was sexually abused—admissibility**

Testimony by a social worker and a pediatrician stating their opinions that the alleged child victim had been sexually abused was not improper opinion testimony as to the credibility of the victim's testimony and defendant's guilt or innocence but constituted proper expert testimony based on each witness's examination of the victim and expert knowledge concerning abused children in general. N.C.G.S. § 8C-1, Rule 608(a).

**4. Criminal Law § 89.1; Rape § 4— expert testimony that family members knew of sexual abuse—opinion evidence on credibility—harmless error**

While opinion testimony by a social worker and a psychologist that other members of the child victim's family were aware that defendant was sexually abusing the child based on statements made to them by the child may have constituted inadmissible opinion evidence as to the child's credibility, the admission of such opinion testimony was not reversible error in light of other admissible evidence concerning the family's awareness of defendant's sexual abuse of the child.

State v. Bailey

5. **Criminal Law §§ 50.1, 89.1; Rape and Allied Offenses § 4— expert testimony—behavior consistent with sexual abuse—not opinion on credibility**

     The trial court did not err in permitting a psychologist to testify concerning his observations of anxiety and anger exhibited by an alleged sexual offense victim during his examination of her and to give his expert opinion as to the relationship between the victim's anxiety and anger and the events she described during the examination, since such testimony did not constitute an opinion on the victim's credibility or reliability.

6. **Constitutional Law § 30— child sexual abuse victim—Department of Social Services records—in camera inspection—ruling that unnecessary for defense**

     In this prosecution for a sexual offense and taking indecent liberties with a minor, the trial court did not err in ruling, after an *in camera* inspection of certain Chatham County Department of Social Services records pertaining to the victim, that all records material to defendant's defense were made available to defendant and that the remaining records were not material to his case.

APPEAL by defendant from *Hobgood (Robert H.), Judge.* Judgment entered 16 April 1987 in Superior Court, CHATHAM County. Heard in the Court of Appeals 14 January 1988.

Defendant was charged with first degree sexual offense and with taking indecent liberties with a minor. Defendant pled not guilty to both charges, and the charges were joined for trial. The jury found defendant not guilty of the first degree sexual offense and guilty of taking indecent liberties with a minor. The court sentenced defendant to six years' imprisonment. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Elizabeth G. Mc-Crodden, Associate Attorney General, for the State.*

*Public Defender J. Kirk Osborn for defendant-appellant.*

PARKER, Judge.

On appeal, defendant raises six questions for review by this Court: (i) whether the trial court erred in denying defendant's motion for a bill of particulars as to the exact location of the alleged offense; (ii) whether the trial court erred in permitting two of the State's expert witnesses to explain why a child would cooperate with a person who had sexually abused her; (iii) whether the trial court erred in permitting two of the State's expert witnesses to give their opinions that the child had been sexually abused; (iv)

whether the trial court erred in permitting two of the State's expert witnesses to give their opinions that the family of the child knew defendant was sexually abusing her; (v) whether the trial court erred in permitting one of the State's expert witnesses to state that the child exhibited behavior consistent with her having been sexually abused; and (vi) whether the trial court erred in ruling, after an *in camera* inspection of certain Chatham County Department of Social Services records, that such records contained no evidence material to the defense of this case. We find no error in the court below.

## FACTS

At trial, the State presented evidence tending to show that the prosecuting witness, Angela Donivan, first met defendant when she was five years old. Angela, Angela's mother, and Angela's brothers and sisters lived with defendant on a farm. During the first week of November 1985, when Angela was nine years old, defendant told Angela to come down to the barn to help with some chores. Angela testified that while she was at the barn with defendant, "he put his fingers inside of me and stuff; and he, he messed with me a lot and put his fingers up inside of me." Angela also testified that defendant had done this to her more times than she could count. She also stated that on one occasion defendant "put his fingers inside of [her]" while she rode a pony and he walked along beside her. Angela testified that defendant had exposed himself to her and asked her to touch "his private" although she refused. Angela testified that she told her mother about these incidents, but that this had no effect on defendant's actions.

The State also presented the testimony of Paula Browder, a social worker at the Chatham County Department of Social Services, who interviewed Angela on 8 November 1985 and on several subsequent occasions. After lengthy *voir dire*, the court found Ms. Browder qualified to testify as an expert in the field of social work specializing in child development and family relations. Ms. Browder was permitted to testify as to Angela's statements during the interviews in order to corroborate Angela's testimony. The court also permitted Ms. Browder to state her opinion as to why a child may continue to cooperate with an individual who has abused her sexually. Ms. Browder gave her opinion that Angela

had been sexually abused and that Angela's sisters and her mother knew that defendant was sexually abusing Angela.

Dr. Doug Jackson, a licensed psychologist who interviewed and evaluated Angela on 18 September 1986, testified for the State. After extensive *voir dire*, the court concluded that Dr. Jackson was qualified to testify as an expert in the field of psychology specializing in child abuse. The court permitted Dr. Jackson to relate Angela's statements during his interview with her for the purpose of corroborating Angela's testimony, and also to describe Angela's behavior during his examination that was consistent with her having been sexually abused.

Finally, the State presented the testimony of Dr. Jean Smith, a pediatrician who examined Angela on 12 December 1985. Dr. Smith was qualified by the court as an expert in the field of pediatrics without objection on the part of defendant. Dr. Smith was permitted to testify as to Angela's statements to her in order to corroborate Angela's testimony. She testified that in her opinion, Angela's family members were aware of defendant's actions as to Angela. Dr. Smith was also permitted to explain why a child might continue to cooperate with an individual who has sexually abused the child.

Defendant testified that at the time of trial he was twenty-nine years old and that he married Angela's mother on 16 November 1985, shortly after the alleged incidents with Angela took place. During the first week of November, defendant was employed as a "slider hauler" at Hadley-Peoples; he worked the third shift from eleven at night until seven in the morning; and he did not get home from work until approximately seven-thirty a.m., after Angela had left for school. Defendant went to bed at about noon or one o'clock and woke up for work at about nine or nine-thirty at night. According to defendant, there were no horses or ponies on the farm during the week in question and the barn on the farm had blown down in a windstorm in 1980. Defendant also testified that Angela and her sisters did not want defendant to marry their mother because he attempted to discipline them. Defendant also presented the testimony of Angela's grandmother, defendant's mother, Angela's cousin, and Angela's sister.

## I.

**[1]** Defendant first assigns error to the trial court's denial of his motion for a bill of particulars, requesting, among other facts, "The exact time, date and place" where defendant allegedly committed the indecent liberties offense. In response to this motion, the State filed an answer stating that since the indictment involved a young child it was not possible to be as specific as to time and date as with an adult victim of a crime. The answer also stated that the victim alleged the offenses were ongoing over a period of years and that the date alleged in the indictment, the fourth through the eighth of November 1985, is within a one-week period. The answer is silent as to the location of the offense. The indictment for indecent liberties specifies only that the offense took place in Chatham County.

At trial, defendant argued that the State's response to his motion for a bill of particulars was insufficient in that it failed to narrow down the date of the alleged offense and to specify where the alleged offense took place. The court found that the State made the prosecuting witness Angela available to defendant for interrogation prior to trial. The court denied defendant's motion for further response as to the date of the alleged offense, but ordered the State to provide defendant with information as to the specific farm on which the offense allegedly occurred and with information as to whether the farm was located in Chatham County. Defendant contends in his brief that compliance with this order revealed to defendant "nothing more than what the defense knew already." Defendant argues that the trial court's denial of his motion for a bill of particulars as to the exact location of the alleged offense hampered his ability to prepare his defense. We disagree.

The decision to grant or deny a bill of particulars is generally a matter within the discretion of the trial court and is not reviewable absent a palpable and gross abuse of that discretion. *State v. Easterling,* 300 N.C. 594, 601, 268 S.E. 2d 800, 805 (1980); *State v. McLaughlin,* 286 N.C. 597, 603, 213 S.E. 2d 238, 242 (1975), *death sentence vacated,* 428 U.S. 903, 96 S.Ct. 3206, 49 L.Ed. 2d 1208 (1976). Denial of a defendant's motion for a bill of particulars should be held error only when it is clear "that the lack of timely access to the requested information significantly impaired defendant's preparation and conduct of his case." *State v. Easterling,* 300 N.C. at 601, 268 S.E. 2d at 805.

In this case, we find no significant impairment of defendant's defense and, therefore, no abuse of discretion on the part of the trial court. At trial, Angela testified that the offense occurred in a barn on the farm near the house where she and defendant lived and on a "cut off road" near defendant's driveway. Defendant denied that the offense had occurred and presented evidence that during the week of the alleged offense he did not get home from work until after Angela went to school and went to bed well before Angela returned home from school, and that there was no barn or pony on the farm at the time. Defendant admits he was aware prior to trial that the location of the alleged offense was the farm in Chatham County. Defendant also was given the opportunity to question Angela about the alleged offense prior to trial. Based on the record in this case, we find no indication that defendant suffered any prejudice in the preparation of his defense due to a lack of information as to exactly where on the farm the alleged offense occurred. This assignment of error is without merit.

## II.

[2] Defendant next objects to the testimony of Ms. Browder and Dr. Smith as to why a child would cooperate with an adult who had been sexually abusing the child. Defendant contends that such testimony violates G.S. 8C-1, Rule 405(a), in that it constitutes expert testimony on a character trait of the child, the trait of " 'cooperation with a sexual abuser.' " Defendant also suggests that the objected-to testimony is impermissible expert testimony regarding the credibility of the witness. These contentions are meritless.

In general, G.S. 8C-1, Rule 702, provides,

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

The trial court, after a lengthy *voir dire*, concluded that Ms. Browder was qualified to testify and to give her opinion as an expert in the field of social work specializing in child development and family relations. When asked for her opinion as to why a

child might continue to cooperate with an individual who the child says has been sexually abusive, Ms. Browder answered:

> It's my opinion that a child may continue to cooperate with someone who they say has sexually abused them for several factors. One being that they may be fearful of the individual and what might happen to them. Another being that when it happens specifically over a long period of time, that it becomes a routine which the child is familiar with. The child is not fearful. The child knows they can survive this. Another being that often perpetrators are not hurtful to children. They do not threaten them with harm, and they are not afraid, and they don't anticipate that it will happen every time that they are with the perpetrator. One other factor that plays in here is when a child has gone to a caregiver parent or someone else and asked for it to stop and it does not stop, the child does not know that anyone else can stop it, does not trust and thus accepts it as the way it should be.

The court found Dr. Smith qualified as an expert in the field of pediatrics. When asked if she had an opinion as to why a child such as Angela would continue to cooperate with an individual after that child has made allegations of improper behavior against that individual, Dr. Smith responded,

> My opinion is that many of these children feel frightened or threatened and sense of abandonment if they cannot get help.

In our view, the testimony of Ms. Browder and Dr. Smith as to a child's continued cooperation with a person the child has accused of sexual abuse was specialized knowledge, helpful to the jury and well within the fields of expertise of the two witnesses.

Moreover, defendant "opened the door" for this evidence by cross-examining Angela about going to the barn alone with defendant after she admitted she was afraid of defendant and did not like to be alone with him. Thus, the testimony of Ms. Browder and Dr. Smith was admissible expert testimony that corroborated the testimony of the State's prosecuting witness. *See State v. Oliver*, 85 N.C. App. 1, 354 S.E. 2d 527, *disc. rev. denied*, 320 N.C. 174, 358 S.E. 2d 64 (1987) (pediatrician's testimony that children don't make up stories about sexual abuse held properly admitted);

*State v. Bowman,* 84 N.C. App. 238, 352 S.E. 2d 437 (1987) (physician and surgeon specializing in family medicine properly permitted to testify as to why a child might delay reporting an incident of sexual abuse).

### III.

[3]  Defendant next contends that the trial court erred in permitting Ms. Browder and Dr. Smith to give expert opinion testimony that Angela had been sexually abused. Defendant argues that this testimony is tantamount to the witnesses' assertion that Angela's testimony that she had been abused was believable. We disagree with this contention.

Our appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence. *See State v. Kim,* 318 N.C. 614, 350 S.E. 2d 347 (1986); *State v. Aguallo,* 318 N.C. 590, 350 S.E. 2d 76 (1986); *State v. Heath,* 316 N.C. 337, 341 S.E. 2d 565 (1986). *Accord* G.S. 8C-1, Rule 608(a) comment. However, those cases in which the disputed testimony concerns the credibility of a witness's accusation of a defendant must be distinguished from cases in which the expert's testimony relates to a diagnosis based on the expert's examination of the witness. *See State v. Smith,* 315 N.C. 76, 337 S.E. 2d 833 (1985) (Doctor's opinion that four and five year olds had had sexual intercourse held admissible); *State v. Stanley,* 310 N.C. 353, 312 S.E. 2d 482 (1984) (Doctor's opinion as to whether child had been penetrated held admissible); *State v. Starnes,* 308 N.C. 720, 304 S.E. 2d 226 (1983) (Doctor's opinions that child's vaginal area had been penetrated and that her injuries were probably caused by a penis held admissible).

In the instant case, Ms. Browder and Dr. Smith did not give their opinions as to the credibility of the prosecuting witness's in-court testimony nor did they give their opinions as to defendant's guilt or innocence. Each simply gave her expert opinion based on her examination of the child and based on her expert knowledge concerning abused children in general. Defendant's contentions are without merit.

IV.

[4]    Defendant next contends that the trial court erred in permitting Ms. Browder and Dr. Smith to testify that, in the opinion of each, other members of Angela's family were aware of the occurrence of sexual abuse involving defendant and Angela. Specifically, Ms. Browder testified that in her opinion, two of Angela's sisters and Angela's mother knew that Angela was being sexually abused. Dr. Smith testified that in her opinion members of Angela's family were aware of the episodes of sexual abuse involving Angela. Each of these opinions was based primarily upon statements made by Angela herself. Defendant contends that this testimony was inadmissible opinion evidence as to Angela's credibility.

Although this evidence, amounting, in effect, to testimony that Ms. Browder and Dr. Smith believed Angela when she told them she had reported the incidents of sexual abuse to her family, may have been erroneously admitted into evidence, its admission was not prejudicial. On direct examination, Angela testified that she had told her mother about defendant's sexual abuse of her when it first occurred. Lee Ann Donivan, Angela's older sister, stated for purposes of corroborating Angela's testimony that Angela reported to her at least once the occurrences that transpired between Angela and defendant. Lee Ann then testified that she told her mother about the occurrences. In light of this admissible and unobjected-to evidence concerning the family's awareness of Angela's allegations against the defendant, we find no reversible error in the testimony of Ms. Browder and Dr. Smith on the subject. These assignments of error are overruled.

V.

[5]    Defendant's next assignment of error involves the following testimony of Dr. Jackson as to Angela's anxiousness and anger during his examination of her:

Q. During the course of your interview with Angie Donovan [sic], would you describe her affect or her behavior?

A. She was anxious at being in the interview. When she would describe these events, she would appear more frightened as though these memories would be frightening her. She also expressed anger toward Mr. Bailey.

Q. Did she express anger? Was that the only anger she expressed?

A. She expressed anger toward her mother citing that on two occasions she had told her mother and her mother had not done anything.

Q. Dr. Jackson, can you, would, can you distinguish between Angela's perhaps being anxious at talking with you and the type of anxious that she, that you just described?

.   .   .   .

A. The anxiousness in talking with me would be the anxiousness of anyone who is talking about something very personal and embarrassing to them, talking with a stranger. That anxiety fades away once the child begins to feel that the examiner is someone who will listen to them and will try to understand what it is they're talking about. The anxiety related to the events as she would talk about a specific thing that had happened, she would then look nervous, frightened kind of anxiety.

.   .   .   .

Q. Okay. Dr. Jackson, listening very carefully to what I'm asking you. What criteria did Angela indicate to you with regard to her behavior, or things that she said that would indicate sexual abuse without talking about, could you just talk about behavior things you observed and saw and heard?

.   .   .   .

A. Her, her anxiety as she described, and again almost a fearful kind of anxiety as she described the incident that had occurred. Her anger seemed to be appropriately placed to specific behaviors of Johnny and her mother.

After a careful review of the above testimony, we find no error. Dr. Jackson is a licensed practicing psychologist whom the court found qualified as an expert in the field of child psychology, specializing in child abuse. Dr. Jackson stated that he examined Angela pursuant to a request by the Department of Social Services for an evaluation of Angela in order to determine if the child had been sexually abused and if the child were in need of

treatment. The testimony at issue here consisted of Dr. Jackson's observations of Angela's behavior during the course of his examination and his professional expert opinion as to the relationship between Angela's anxiousness and anger and the events which she described during the examination. Dr. Jackson said nothing regarding Angela's demeanor during her in-court testimony and gave no opinion as to Angela's credibility or reliability. Dr. Jackson's testimony was properly admitted into evidence by the trial court. *See State v. Kennedy,* 320 N.C. 20, 357 S.E. 2d 359 (1987) (psychologist's testimony as to victim's fear of father, behavior during examination, and symptoms consistent with sexual or physical abuse held admissible).

VI.

**[6]** As a final matter, defendant asks this Court to review the trial court's decision regarding records of Angela's case kept by the Chatham County Department of Social Services. Pursuant to the United States Supreme Court decision, *Pennsylvania v. Ritchie,* --- U.S. ---, 107 S.Ct. 989, 94 L.Ed. 2d 40 (1987), the State's interest in maintaining the confidentiality of its files and the defendant's right to access to information necessary to the preparation of his defense are properly balanced by an *in camera* review of the records by the trial court and the trial court's obligation to release information material to the fairness of the trial.

After inspection of the Chatham County Department of Social Services' records on Angela's case, we concur with the trial court's determination that all records material to the preparation of defendant's defense in this action were made available to defendant and that the remaining records were not material to his case.

For the reasons stated above, defendant received a fair trial, free from prejudicial error.

No error.

Judges COZORT and GREENE concur.