STATE OF NORTH CAROLINA v. ERIC MARSHALL HAMMETT

No. COA05-377

(Filed 7 February 2006)

**Evidence— expert testimony—victim sexually abused—plain error**

The trial court committed plain error in a multiple statutory sexual offense and multiple taking indecent liberties case by admitting expert testimony that based on the victim's statements alone the expert would have diagnosed the victim as having been sexually abused, and defendant is entitled to a new trial, because: (1) the Court of Appeals has repeatedly held that the admission of expert testimony that a child victim has suffered sexual abuse absent physical findings is error; (2) the injuries could have been caused by someone other than defendant; (3) in this evidentiary context where the physical findings revealed a tenuous connection to defendant, and defendant and the victim gave conflicting accounts of factual matters central to the criminal charges, the credibility of the witnesses was particularly important; (4) although a victim's testimony standing alone is generally sufficient to survive a motion for directed verdict, in the instant case where plain error analysis is concerned, the concern is whether there was overwhelming evidence of defendant's guilt independent of the improper testimony instead of whether there was substantial evidence in the record to allow the offenses to be submitted to the jury in the absence of the improper opinion testimony; (5) there is a likelihood that the outcome of the verdicts would have been different in the absence of the expert's impermissible expert opinion since the case rested largely on the credibility of witnesses; and (6) the expert's inadmissible testimony, considered in context and in full, could also have been associated by the jury with the conduct underlying the indecent liberties charges.

Judge TYSON dissenting.

Appeal by defendant from judgment entered 11 February 2004 by Judge Steve A. Balog in Cabarrus County Superior Court. Heard in the Court of Appeals 17 November 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Kelly L. Sandling, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant.*

LEVINSON, Judge.

Eric Marshall Hammett (defendant) appeals from a judgment entered 11 February 2004 consistent with jury verdicts finding him guilty of three counts of statutory sexual offense and seven counts of taking indecent liberties with a child. Because the admission of expert testimony in this case resulted in plain error, we must grant a new trial on all counts.

The State's evidence presented at trial tended to show the following:

Defendant's daughter C.H. was born 10 August 1989. C.H. alleged that defendant committed various acts of sexual abuse against her in the spring of 2003. C.H. came to live with defendant during her seventh grade year, in December 2001. Prior to that time, C.H. lived with her mother and her mother's boyfriend, D.C. C.H. testified she did not like it when she had to go live with her father: "I loved my mom too much. I don't like getting away from her."

C.H. testified that D.C. engaged in various sexual acts with her from when she was five years of age until she was approximately ten and one half years of age. C.H. testified D.C. would lick her private area, and have her masturbate him. C.H. testified that D.C. never penetrated her vagina in any way.

C.H. testified defendant committed various sexual acts on her while she lived with him in Cabarrus County between January and April 2003. C.H. stated that defendant watched pornographic videos in front of her and masturbated during the videos; that, at defendant's request, C.H. straddled defendant's lower waist while defendant lay in bed; that defendant measured her chest and "private area" with a measuring tape three or four times; that one time defendant asked her to "kiss me like you love me" and as he kissed her, he tried to put his tongue in her mouth; that defendant reached under her shirt and rubbed lotion on her breasts; that in the spring of 2003 defendant took two showers with C.H. and put his fingers inside her vagina both times; that, at defendant's request, C.H. washed defendant's genitals with her bare hands while taking a shower with him; and that, while C.H. was lying on a bed after taking a shower, defendant opened her

**STATE v. HAMMETT**

[175 N.C. App. 597 (2006)]

legs, shaved the hair around her vaginal area, and put his tongue into her vagina. C.H. testified she related these events to a friend at school (hereafter "the friend"), and was removed from defendant's home that same day.

The friend testified that C.H. had confided in her the sexual abuse C.H. was experiencing at home. The friend called her mother. The friend's mother then called the appropriate authorities.

Dr. Rosalina Conroy, a pediatrician, testified that she examined C.H. on 28 April 2003 to evaluate her for possible sexual abuse. Dr. Conroy performed a genital examination which included photographing C.H.'s genital area. Dr. Conroy testified that the photographs revealed a "notch" in C.H.'s hymen and a defect in the posterior fourchette, an area at the bottom of the hymenal ring towards the anus. Dr. Conroy stated the types of injuries she observed were made from "penetrating vaginal trauma with a hard object." During her second day of testimony, Dr. Conroy testified that C.H.'s statements, regarding having been abused by defendant, were consistent with those made by children who were telling the truth and that, even in the absence of physical findings, Dr. Conroy's diagnosis of sexual abuse would remain the same. This testimony is set forth in more detail below.

Concord Police Department Detective Larissa Cook testified that defendant agreed to speak to her regarding the allegations of sexual abuse. On 8 May 2003, defendant told Detective Cook that C.H. had a hygiene problem and that he had showered with her naked and had used a wash cloth to wash C.H. "from head to toe."

Defendant testified. He admitted showering with C.H. on two occasions and washing her "private areas." Defendant denied all the other material allegations C.H. made against him. He denied having fondled C.H.'s breasts, trying to French kiss her, having her straddle him on a bed, measuring her, touching her private parts, and watching pornographic movies with her.

The jury returned verdicts of guilty on all counts. The trial court consolidated all offenses for judgment and sentenced defendant to an active prison term of 288-355 months imprisonment. From this judgment, defendant appeals.

---

Defendant contends the trial court erred by admitting Dr. Conroy's expert opinion that, based on C.H.'s statements alone, Dr.

Conroy would have diagnosed her as having been sexually abused. Because defendant did not object to Dr. Conroy's testimony at trial, we review for plain error. *See State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) ("[P]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.") (internal quotation marks and citation omitted).

" 'Our appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence.' " *State v. Figured*, 116 N.C. App. 1, 7, 446 S.E.2d 838, 842 (1994) (quoting *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988) (citations omitted)). Furthermore, our Supreme Court's mandate in *State v. Stancil*, 355 N.C. 266, 559 S.E.2d 788 (2002), regarding the admissibility of expert testimony in child victim sexual abuse cases, is clear: "In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *Id.* at 266-67, 559 S.E.2d at 789 (citations omitted).

This Court has repeatedly found that the admission of expert testimony that a child victim has suffered sexual abuse, absent physical findings, is error. *See State v. Delsanto*, 172 N.C. App. 42, 55-56, 615 S.E.2d 870, 873 (2005) (absent physical indications of abuse, it was error to admit expert testimony that the victim " 'suffered from the sexual abuse that she disclosed to [the doctor] and [victim's] family' "); *State v. Ewell*, 168 N.C. App. 98, 105-06, 606 S.E.2d 914, 919, *disc. review denied*, 359 N.C. 412, 612 S.E.2d 326 (2005) (error for the trial court to allow expert testimony that it was " 'probable that [the child] was a victim of sexual abuse' " when the testimony was "not based on any physical evidence or behaviors consistent with sexual abuse"); *State v. Couser*, 163 N.C. App. 727, 729-31, 594 S.E.2d 420, 423 (2004) (error to admit expert testimony that the child was "probably sexually abused" where the physical evidence was insufficient to support diagnosis of sexual abuse); *State v. Bush*, 164 N.C. App. 254, 259, 595 S.E.2d 715, 718 (2004) (error to admit doctor's testimony that " '[the victim] was sexually abused by [defendant]' " absent physical evidence of abuse); *State v. Grover*, 142 N.C. App. 411, 418-19, 543 S.E.2d 179, 183 (2001) (error to admit expert testimony that the child had been sexually abused where the expert opinion was based solely on the child's statements); *State v. Trent*, 320 N.C. 610, 614, 359

S.E.2d 463, 465-66 (1987) (physical evidence that hymen was not intact, where "the condition of the hymen alone would not support a diagnosis of sexual abuse," was insufficient to support a diagnosis of sexual abuse of child victim).

Our analysis of the instant case is governed by this Court's three recent holdings in *Delsanto, Ewell,* and *Bush* noted above.

In *Delsanto,* a medical examination of the child victim revealed no physical evidence of sexual abuse and the State's expert medical witness, Dr. Kathleen Russo, testified as follows:

> My diagnosis was that [the child victim] had suffered from the sexual abuse that she disclosed to me and her family. . . . So based on what she told me, the consistency of what she told me, what she told the parents, what she told law enforcement was just all very striking, and that I felt like she was—that she did experience that abuse.

*Delsanto,* 172 N.C. App. at 47, 615 S.E.2d at 873-74. As this Court noted, "Dr. Russo conclusively stated that defendant sexually assaulted [the victim] when she testified that she diagnosed [the victim] as having been sexually abused by defendant[.]" *Id.* at 47, 615 S.E.2d at 873. Dr. Russo's testimony "amounted to an impermissible opinion of [the victim's] credibility." *Id.* at 47, 615 S.E.2d at 874.

In *Ewell,* the doctor testified that, "based upon the physical exam '[t]here's no way . . . I could prove or disprove that she's had sexual intercourse or been sexually active.' " *Ewell,* 168 N.C. App. at 104, 606 S.E.2d at 919. In formulating her diagnosis, "[the doctor] acknowledged that 'I'm relying on the history [the child gave] being true[.]' " *Id.* at 105, 606 S.E.2d at 919. This Court held the admission of the doctor's testimony regarding her diagnosis of sexual abuse was error. *Id.*

In *Bush,* the State's expert was again Dr. Russo. Dr. Russo testified:

> I was impressed by [the victim's] sensory recollection . . . and the fact that she could tell me how she felt, how she was feeling that evening, what she felt, and what she did when she realized what was happening, what Mr. Bush's response was when she realized he was waking up, where they were, where the other people in the family were at the time, all of that other sensory recollection was very telling and adds to the *credibility* of her story.

*Bush,* 164 N.C. App. at 259, 595 S.E.2d at 718. In *Bush,* this Court reasoned, "[t]he practical effect of Dr. Russo's testimony was to give [the victim's] story a stamp of credibility by an expert in pediatric gynecology[.]" *Id.* at 259, 595 S.E.2d at 719.

In the instant case, Dr. Conroy gave two opinions regarding whether the victim had been sexually abused. On the first day of her testimony, Dr. Conroy gave an opinion that C.H. was sexually abused. This opinion was based upon some physical findings discussed in greater detail, *infra,* and has not been challenged on appeal. On the second day of her testimony, Dr. Conroy testified that, even absent physical findings, her diagnosis of sexual abuse would have been the same:

> What we really based the bulk of our conclusion on is the child's history. And we also—we look for different things in the history. We look especially for consistency because when kids are not telling the truth, they don't have details to it, they don't have consistency to it. . . . And in this case, in [C.H.'s] case, her story was extremely consistent and she gave details, the details—especially the detail that she gave about the pain and how sharp it was, that it went to her back. That's not the kind of history that we get if something has not really happened. So that's what we based our conclusion [on]. <u>And even if there were absolutely no physical findings, my conclusion would still be the same, based on her history that her consistent history [and] plenty of details in that history is that she has been sexually abused</u>.

On appeal, defendant objects to the statements Dr. Conroy made during her second day of testimony, particularly the underlined portion above. Our review of the transcript reveals that factfinders could reasonably infer that Dr. Conroy's testimony on the second day, noted immediately above, concerned the allegations for which defendant stood accused and not the abuse suffered by C.H. in earlier years. We conclude this testimony is functionally indistinguishable from that held to be error in *Delsanto, Ewell,* and *Bush.* Dr. Conroy provided an expert opinion of sexual abuse premised on an absence of physical findings, and essentially vouched for the credibility of C.H. Therefore, the admission of this testimony was error.

We next review the admission of Dr. Conroy's testimony under the plain error doctrine to determine whether defendant must be afforded a new trial. Plain error is error "so fundamental as to amount

to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987) (citations omitted). "Our Supreme Court has extended plain error review to issues concerning admissibility of evidence." *Ewell*, 168 N.C. App. at 102, 606 S.E.2d at 917 (citing *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 807 (1983)). "We examine the entire record to decide whether the error 'had a probable impact on the jury's finding of guilt.' " *Id.* (quoting *Odom*, 307 N.C. at 661, 300 S.E.2d at 379). "For a jury trial to be fair it is fundamental that the credibility of witnesses must be determined by them, unaided by anyone, including the judge." *State v. Holloway*, 82 N.C. App. 586, 587, 347 S.E.2d 72, 73-74 (1986). "[A]n expert's opinion to the effect that a witness is credible, believable, or truthful . . . is plain error when the State's case depends largely on the prosecuting witness's credibility." *State v. Hannon*, 118 N.C. App. 448, 451, 455 S.E.2d 494, 496 (1995) (citations omitted).

The State argues that even if the admission of Dr. Conroy's second day of testimony was error, the error did not amount to plain error because of the overwhelming evidence of defendant's guilt. *See Stancil*, 355 N.C. at 267, 559 S.E.2d at 789 (despite the error in the admission of the expert opinion regarding a diagnosis of sexual abuse absent physical evidence of such abuse, no plain error where there was other overwhelming evidence of defendant's guilt).

We next determine whether there was overwhelming evidence of defendant's guilt independent of Dr. Conroy's impermissible expert opinion to support the convictions. This is a critical inquiry because, as our case law informs, there is no plain error where the error did not have a probable impact on the outcome of the trial.

Here, the State's case was almost entirely based on C.H.'s out-of-court statements and in-court testimony; Dr. Conroy's testimony concerning the physical findings and expert opinion of sexual abuse that was elicited on the first day of her testimony; and the testimony of the friend and Detective Cook which largely corroborated C.H.'s allegations. Defendant denied all the material allegations, though he acknowledged taking showers with C.H. on two occasions for purposes unrelated to sexual gratification or arousal. From her examination of C.H., Dr. Conroy noted some physical evidence consistent with C.H.'s statements of having been sexually abused by defendant. Dr. Conroy's pertinent testimony, during her first day of testimony, follows:

**STATE v. HAMMETT**

[175 N.C. App. 597 (2006)]

Q: Doctor Conroy, the nurse testified that C.H. told her about another incident involving another person that involved a licking and her touching that other person. In your opinion, are those incidents, could they cause the injuries that you just talked about?

A: No, they cannot. The types of injuries that I saw were made from penetrating vaginal trauma with a hard object.

Q: Hard object, would that be consistent with a finger?

A: No. Well, the hymenal ring could be, but the posterior fourchette it would have to be a larger object.

Q: Now, what about more than one finger?

A: Again, the hymenal ring could—it could definitely be explained by that. The posterior fourchette, given how—given the depth of that scar, it's possible.

Q: But with the oral act?

A: No, absolutely not.

. . . .

Q: And after discussing her history and examining her, did you reach a medical conclusion in this case?

A: Yes, I did.

Q: And what was that conclusion?

A: I concluded that she had been repeatedly sexually abused.

On cross-examination, Dr. Conroy testified as follows:

Q: A person on one occasion inserting their tongue into this female's vagina, in your professional opinion is that sufficient to cause this trauma that you see?

A: Absolutely not.

Q: A person on one occasion inserting his tongue into this person's vagina and on another occasion inserting a finger or fingers into this person's vagina—nothing else, just those two incidents—is that sufficient to cause this trauma that you saw here?

A: No, this is repeated.

Q: My next question, a person's tongue on one incident being inserted into this person's vagina together with a second separate incident where finger or fingers is inserted into this person's vagina combined with a second incident, meaning three incidents—tongue, finger or fingers, third incident being finger or fingers inserted in this person's vagina, nothing else just those three incidents, is that sufficient to cause this trauma that you're talking about?

A: No.

On re-direct examination, Dr. Conroy testified:

Q: [I]s it possible that inserting fingers and licking—is it not possible, depending on the size of the fingers and how those fingers were used that they could have caused some of the injury that you saw?

A: Yes, and they would have caused pain which would explain the notch at the six o'clock position in the hymen.

On recross-examination, Dr. Conroy testified:

Q: That is scarring consistent with many times over time?

. . . .

A: It's many times, right, over time, but I can't say over how long.

Dr. Conroy's testimony on the first day regarding whether the acts alleged against defendant could have caused the injuries she observed was contradictory. At first, Dr. Conroy testified that the digital penetration defendant was accused of could have caused the injuries she noted. Later, Dr. Conroy testified that the acts the defendant was accused of could not have caused the physical findings she observed. Upon further questioning, Dr. Conroy stated that defendant's alleged acts could have caused "some of the injury" she had observed. Dr. Conroy's opinion linking defendant to the crimes charged was equivocal at best. Furthermore, the one assertion Dr. Conroy consistently made was that the physical trauma she had observed had been caused by "repeated" penetration "many times . . . over time." Where the sexual assaults defendant was accused of consisted of cunnilingus and two instances of digital vaginal penetration, the testimony linking the physical findings to the accusations involving defendant was, in short, not strong evidence of defendant's guilt. Stated alternatively, the injuries could easily have been caused by someone other than defendant.

In this evidentiary context, where the physical findings revealed a tenuous connection to defendant, and C.H. and defendant gave conflicting accounts of factual matters central to the criminal charges, the credibility of the witnesses was particularly important. Without Dr. Conroy's inadmissible testimony, the jury would have been essentially left with C.H.'s accusations, defendant's denial, and Dr. Conroy's expert opinion that sexual abuse occurred—an opinion that did little to connect C.H.'s physical injuries to the conduct for which defendant stood accused. Under these circumstances, the jury's factual evaluation of whether defendant caused the injuries is of obvious importance. With Dr. Conroy's inadmissible testimony, the jury could more freely discount the uncertain cause or origin of C.H.'s injuries and rely heavily, instead, on an opinion that C.H. was sexually abused from a witness accepted by the court as an expert in pediatric medicine—essentially an opinion that C.H. was sexually abused by defendant because C.H. was believable.

The dissent correctly observes that a victim's testimony, standing alone, is generally sufficient evidence to survive a motion for directed verdict. Here, however, in evaluating whether plain error occurred, we are concerned with whether there was overwhelming evidence of defendant's guilt independent of the improper testimony, not whether, in the absence of the improper opinion testimony, there was substantial evidence in the record to allow the offenses to be submitted to the jury. There is a likelihood that the outcome of the verdicts would have been different in the absence of Dr. Conroy's impermissible expert opinion because the case rested largely on the credibility of witnesses. Accord *Hannon, supra.* Moreover, we respectfully disagree with the dissent insofar as it appears to conclude that the inadmissible opinion by Dr. Conroy that C.H. was "sexually abused" was necessarily limited to whether defendant penetrated C.H. We conclude, instead, that Dr. Conroy's inadmissible testimony, considered in context and in full, could have been associated by the jury with the conduct underlying the indecent liberties charges, too. Thus, the likely prejudice to the outcome of the indecent liberties verdicts is as real as that linked to the statutory sexual offenses.

This case rested largely on the credibility of the witnesses because the evidence shows that the objective physical findings could have easily not been caused by defendant. That C.H. was likely "repeatedly sexually abused" by someone was not seriously challenged at trial. Instead, it was whether the defendant abused C.H., and whether the alleged actions on his part could even cause C.H.'s

injuries. The transcript reveals that counsel for both the State and defendant recognized the importance of the factual question of the origin of the injuries, and thoroughly questioned Dr. Conroy concerning the same. "That [the] grossly improper testimony [of Dr. Conroy] unfairly affected defendant's trial seems obvious to us." *Holloway*, 82 N.C. App. at 587, 347 S.E.2d at 73.

We conclude that, in the absence of the inadmissible testimony, there is a reasonable probability the jury would have reached different results. Regrettably, our careful review of the record reveals the outcome of the trial was not reliable, and we therefore cannot sustain defendant's 24 year prison term.

New trial.

Judge HUDSON concurs.

Judge TYSON dissents with a separate opinion.

TYSON, Judge, dissenting.

The majority's opinion grants defendant a new trial on all convictions and asserts the trial court committed plain error in allowing the admission of Dr. Conroy's testimony. The trial court's admission of Dr. Conroy's testimony did not constitute plain error and was not so prejudicial to award defendant a new trial. I respectfully dissent.

## I. Dr. Conroy's Expert Testimony

The majority's opinion holds this case is governed by this Court's prior precedents in *State v. Delsanto*, 172 N.C. App. 42, 615 S.E.2d 870 (2005), *State v. Ewell*, 168 N.C. App. 98, 606 S.E.2d 914 (2005), and *State v. Bush*, 164 N.C. App. 254, 595 S.E.2d 715 (2004). Their opinion misapplies and unduly enlarges and extends the holdings in *Delsanto*, *Ewell*, and *Bush* to award defendant a new trial on the facts before us.

In *Delsanto*, a medical examination of the child victim revealed no physical signs of sexual abuse. *Delsanto* at 55, 615 S.E.2d at 872. Nonetheless, the medical expert testified that she diagnosed the child as having been sexually abused by the defendant. *Id.* at 55-56, 615 S.E.2d at 872. Similarly, in *Ewell* the medical expert testified she diagnosed the victim as sexually abused even though she could not prove or disprove, by the results of the physical examination, whether the

victim had engaged in sexual intercourse or had previously been sexually active. *Ewell,* 168 N.C. App. at 104, 606 S.E.2d at 919. The medical expert in *Bush* also testified that the child was sexually abused even though no physical evidence of sexual abuse was present. *Bush,* 164 N.C. App. at 258, 595 S.E.2d at 718. In each of these cases we found the trial court's admission of the expert's testimony and opinion that the victim was sexually abused to be plain error and awarded a new trial. These cases are easily distinguishable from the facts of this case.

Here, substantial physical evidence of sexual abuse of the victim was presented. Dr. Conroy performed a physical examination of C.H. which included the use of a special camera to magnify abnormalities in C.H.'s genital area. Dr. Conroy testified that the photographs taken during C.H.'s examination revealed a "notch" at the six o'clock position of her hymen. The physical examination also revealed a scar on the posterior fourchette, that was "irregular." Dr. Conroy testified that the types of injuries revealed from the genital examination "were made from penetrating vaginal trauma with a hard object." C.H. was thirteen years old at the time of these assaults and testified that she had not engaged in any penetrating vaginal contact before these assaults occurred.

## II. Expert Medical Testimony of Sexual Abuse

The rule regarding the admissibility of expert medical testimony in child sexual abuse cases is well-established. In *State v. Stancil,* our Supreme Court stated, "In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has in fact occurred because, *absent physical evidence supporting a diagnosis of sexual abuse,* such testimony is an impermissible opinion regarding the victim's credibility." 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (citation omitted) (emphasis supplied).

> An expert medical witness may render an opinion pursuant to Rule 702 that sexual abuse has in fact occurred if the State establishes a proper foundation, i.e. physical evidence consistent with sexual abuse. . . . However, *in the absence of physical evidence to support a diagnosis of sexual abuse, expert testimony that sexual abuse has in fact occurred is not admissible because it is an impermissible opinion regarding the victim's credibility.*

*Ewell,* 168 N.C. App. at 103, 606 S.E.2d at 918 (quoting *State v. Dixon,* 150 N.C. App. 46, 52, 563 S.E.2d 594, 598) (emphasis in original). *See*

STATE v. HAMMETT

[175 N.C. App. 597 (2006)]

*also State v. Couser*, 163 N.C. App. 727, 729-31, 594 S.E.2d 420, 423 (2004) (error to admit expert testimony that the child was "probably sexually abused" where the physical evidence was insufficient to support a diagnosis of sexual abuse); *State v. Grover*, 142 N.C. App. 411, 418-19, 543 S.E.2d 179, 183-84 (2001) (Expert opinion testimony that the child had been sexually abused based solely on the child's statements lacks a proper foundation where no physical evidence of abuse is shown), *aff'd*, 354 N.C. 354, 553 S.E.2d 679 (2001). "[W]hile it is impermissible for an expert, in the absence of physical evidence, to testify that a child has been sexually abused, it is permissible for an expert to testify that a child exhibits characteristics [consistent with] abused children." *Grover*, 142 N.C. App. at 419, 543 S.E.2d at 184 (citation and internal quotation marks omitted). Based upon the physical evidence presented, Dr. Conroy was permitted to state her opinion that C.H. had been sexually abused. *Ewell*, 168 N.C. App. at 103, 606 S.E.2d at 918. Substantial "physical evidence to support a diagnosis of sexual abuse" was presented to provide a foundation to admit Dr. Conroy's opinion to which defendant failed to object. *Id.* Defendant's convictions should be sustained.

### III. Plain Error Rule

To award a new trial for plain error, the trial court's error must be "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987) (citations omitted), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988). In the absence of Dr. Conroy's opinion testimony, it is not probable that the jury would have reached a different verdict. Other substantial evidence of defendant's guilt was presented in addition to Dr. Conroy's testimony. Defendant admitted at trial to taking showers with C.H. and washing her private areas on both occasions. Defendant stated he directed C.H. to get in the shower the second time because "she stunk," and defendant proceeded to get into the shower with her. The second shower incident occurred just two days after the first. Defendant's reason for entering nude into the shower with C.H. was that "she had bad personal hygiene." At trial, defendant denied instructing C.H. to wash him. The State impeached defendant's testimony with his prior statement in which he admitted to having C.H. "wash his arms and legs." *State v. Aguallo*, 322 N.C. 818, 824, 370 S.E.2d 676, 679 (1989) ("Prior statements by a defendant are a proper subject of inquiry by cross-examination."); N.C. Gen. Stat. § 8C-1, Rule 607 (2005). Defendant then stated he instructed

C.H. to wash "the upper part of his chest." When asked to explain to the jury how C.H.'s washing him helped her personal hygiene, defendant admitted, "I have no explanation of that."

. C.H.'s classmate at school, E.O., also corroborated C.H.'s accounts. C.H. told E.O. of the assaults and abuses the day after the second shower incident occurred. E.O. testified C.H. told her at school about the shower incidents and that defendant had made C.H. kiss him. C.H. also told E.O. that defendant tried to "French ·Kiss" her. E.O. testified that C.H. "was very uncomfortable and that she was sad and depressed, and it was hard for her to talk about it."

Sherry Cook ("Cook"), a registered nurse at the Children's Advocacy Center at NorthEast Medical Center, also corroborated C.H.'s testimony. Cook testified she interviewed C.H. on 28 April 2003. C.H. told Cook that defendant (1) masturbated on the bed in C.H.'s presence while watching a pornographic video; (2) penetrated her vagina with his fingers in the shower; (3) instructed C.H. to wash his penis in the shower and "hold it like a hose"; (4) shaved her "bikini area" with a razor; (5) inserted his tongue into her vagina "for a few seconds"; (6) attempted to put his tongue into her mouth; and (7) had C.H. straddle him on the bed and "move up and down." This testimony was admitted without defendant's objection and was not contradicted.

## IV.  Indecent Liberties with a Child Convictions

Presuming the majority's award of a new trial for defendant is legally sound on the statutory sexual offense convictions, awarding defendant a new trial for his convictions of indecent liberties with a child.based on plain error in the admission of Dr. Conroy's expert opinion testimony is unwarranted.

The jury found defendant to be guilty of seven counts of taking indecent liberties with a child by: (1) having C.H. wash his private parts; (2) fondling C.H.'s breasts; (3) actually or attempting to "French Kiss" C.H.; (4) having C.H. straddle defendant on the bed and "bounce up and down" on him; (5) touching C.H.'s private parts while "measuring" her; (6) touching C.H.'s private parts while "measuring" her on a separate occasion; and, (7) masturbating in C.H.'s presence while watching a pornographic movie.

N.C. Gen. Stat. § 14-202.1(a) (2005) states:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

Here, defendant was 31 years old and C.H. was 13 years old when the incidents occurred.

Actual touching or any physical contact with the minor child is not necessary for defendant to be found guilty under this statute. *State v. Hicks*, 79 N.C. App. 599, 603, 339 S.E.2d 806, 809 (1986). *See also State v. Turman*, 52 N.C. App. 376, 278 S.E.2d 574 (1981) (conviction upheld where defendant masturbated in the presence of the child); *State v. Kistle*, 59 N.C. App. 724, 297 S.E.2d 626 (1982), *disc. rev. denied*, 307 N.C. 471, 298 S.E.2d 694 (1983) (conviction upheld where defendant photographed the nude child in a sexually suggestive position). "The uncorroborated testimony of the victim is sufficient to convict under N.C.G.S. § 14-202.1 if the testimony establishes all of the elements of the offense." *State v. Quarg*, 334 N.C. 92, 100, 431 S.E.2d 1, 5 (1993) (citing *State v. Vehaun*, 34 N.C. App. 700, 705, 239 S.E.2d 705, 709 (1977), *cert. denied*, 294 N.C. 445, 241 S.E.2d 846 (1978)).

Physical evidence of sexual abuse or any physical contact with the victim is wholly unnecessary to sustain a conviction for taking indecent liberties with a child. *Id.* The testimony of Dr. Conroy was not required to sustain defendant's convictions pursuant to N.C. Gen. Stat. § 14-202.1(a).

C.H.'s testimony, standing alone, was sufficient to support the convictions on the taking indecent liberties with a child charges. Her testimony was also corroborated by two other witnesses other than Dr. Conroy, and defendant admitted to acts and activities with C.H. sufficient to sustain his indecent liberties convictions. Defendant should not be granted a new trial on any of the taking indecent liberties with a child convictions even if the admission of Dr. Conroy's opinion testimony was plain error.

## V. Credibility and Weight of the Evidence

The majority's opinion erroneously determines the credibility of the witnesses and the weight to be afforded their testimonies to award a new trial. This role is reserved to the jury, and not to an appellate court. The majority's opinion states: (1) "the testimony linking the physical findings to the accusations involving defendant was, in short, not strong evidence of defendant's guilt"; (2) "the injuries could have easily have been caused by someone other than defendant"; (3) "[Dr. Conroy's opinion] did little to connect C.H.'s physical injuries to the conduct for which defendant stood accused"; (4) "the evidence shows that the objective physical findings could have easily not been caused by defendant". These issues are all questions of fact that were properly determined by the jury. It is not the province of this Court to substitute its judgment for the verdict of the triers of fact. *Mattox v. Huneycutt*, 3 N.C. App. 63, 65, 164 S.E.2d 28, 29 (1968) ("This Court will not substitute its judgment for that of the triers of the facts.").

## VI. Conclusion

Substantial evidence was presented that C.H.'s genital organs exhibited physical signs of sexual abuse. In accord with well-established precedents, it was not error, and certainly not plain error, for the trial court to admit Dr. Conroy's opinion that C.H. had been sexually abused after the State laid a proper foundation for her testimony.

Even if Dr. Conroy's testimony rose to plain error on the statutory sexual offenses, defendant's convictions for taking indecent liberties with a child do not require any element of physical abuse or contact, and should be sustained on C.H.'s testimony and defendant's admissions alone. *Ewell*, 168 N.C. App. at 103, 606 S.E.2d at 918. I vote to hold that no error, plain or otherwise, occurred during defendant's trial. I respectfully dissent.