BRYANT, Judge.
 

 *390
 
 Where an expert witness's testimony did not constitute improper vouching, the trial court did not err in admitting the testimony. Furthermore, defendant did not receive ineffective assistance of counsel where defendant's trial counsel failed to object to testimony that was admissible.
 

 Perry,
 
 [1]
 
 the minor victim in this case, originally lived with his mother, father, sister Nancy,
 
 [2]
 
 and other siblings in New York. When the family split up, Perry, Nancy, and two other siblings moved to North Carolina to live with their aunt, cousins, and grandmother. After a while, his mother came to
 
 *306
 
 North Carolina and Perry and his siblings moved in with her.
 

 When Perry was thirteen years old, his mother brought defendant Timothy Neal Prince into their home in Raleigh. According to Perry, defendant and his mother were in a relationship for about six months. At first, Perry thought defendant was "cool," but after a few days, defendant got upset and punched Perry's mother in the stomach and then punched Perry in the face. The next night, defendant got upset again and hit Perry's mother and threw a night stand at her. Perry was hit by the night
 
 *391
 
 stand when he tried to grab it. Perry was beaten by defendant on several other occasions, at least three times while trying to defend his mother.
 

 On one occasion, defendant took Perry and his family to a cookout party. Defendant was drinking. At some point during the party, defendant asked Perry and defendant's niece to come outside. Defendant told Perry to hit his niece, which Perry refused to do. Defendant then told his niece to hit Perry, which she did. Then, defendant punched Perry in the face. Perry began crying and told a relative that defendant "remind[ed] [him] of [his] father." When defendant heard what Perry had said (Perry's father was abusive), defendant became angry and told Perry, Perry's mother, and Nancy to get in his truck.
 

 At some point on the way home, defendant stopped at a highway exit and told Perry to get out of the truck. Defendant pulled Perry out of the truck and hit him with a bat several times. Perry took off running, and defendant tried to run Perry down with his truck. Eventually, defendant cornered Perry between the woods and the truck and said, "if you don't come out, I will hit you with this bat." Perry's mother was able to convince Perry to walk back and get in the truck. As they got close to home, defendant stopped the truck again, got out of the truck, and hit Perry with the bat. Then, defendant took a metal flashlight and hit Perry three times on the head. The third blow split Perry's "head open," and Perry had to wrap his head in his mother's shirt to avoid getting blood in defendant's truck.
 

 Once at home, defendant told Perry, "I am going to shoot you through the head if this gets out[,]" presumably referring to the abuse he inflicted on Perry. Defendant also told Perry, "if anyone asks you, just say you fell off the bed, the bunk bed." At trial, Nancy testified that "we all lied. We lied to survive."
 

 The next day, Perry's head was still bleeding and aching, and he was limping because of a hurt knee. When later asked why he had not told anyone at school, Perry said, "[b]ecause he, the defendant, had previously been to school and he said no matter where [he] was, if [Perry] told anyone about this, it didn't matter where [he] was, [defendant] would come and find [him] and do it again." Later, when Perry's mother took Perry to the emergency room, defendant was also present either in the treatment room or just outside the door, so Perry was afraid to tell the truth about how his injuries were sustained. Due to the injuries, staples were put in his head and his knee. Perry also had a cast put on his arm for a fracture to the elbow area, which was on for six weeks, followed by another cast.
 

 *392
 
 Perry's mother also testified about a choking incident involving defendant and Perry. The mother did not observe the incident, but heard Perry cry out. According to Perry, defendant wrapped his arm around Perry's neck and choked him, such that Perry was unable to "really breathe" and he was "gasping for air." There was no injury Perry's mother could easily see, but the next morning Perry's eyes looked funny-the blood vessels in his eye were "popped open and bleeding"-so the mother took Perry to the hospital, where he was diagnosed with a form of asphyxiation.
 

 When Perry's maternal aunt came over to the house shortly after Perry's ER visit where his arm was put in a cast, she continued to ask what happened until Perry finally told her that defendant had hit him with a bat. After consulting with family members, Perry's aunt called Child Protective Services ("CPS") that evening.
 

 Initially, when a social worker came to the home, Perry's mother and sisters denied that anything had happened; defendant was present
 
 *307
 
 in the room during the social worker's visit. Eventually, however, Nancy told one social worker about what happened because she "couldn't deal with it anymore and [she] didn't want to see nobody hurt." Shortly thereafter, Perry and his siblings were removed from the home. At the time of trial, Perry was residing in a controlled facility in South Carolina receiving treatment for, several conditions, including PTSD and depression.
 

 On 13 January 2014, an arrest warrant was issued for defendant for the offenses of (1) feloniously and intentionally inflicting serious bodily injury (broken arm and head and leg lacerations ) on a child (Perry) who was under sixteen years old; and (2) unlawfully and willfully and feloniously assaulting the child and inflicting personal injury (causing subconjunctival hemorrhages by strangulation by placing an arm around Perry's neck and squeezing), in violation of
 
 N.C. Gen. Stat. § 14-318.4
 
 (a3) and 14-32.4(B). On 27 October 2014, an indictment was returned against defendant for felony child abuse inflicting serious bodily injury and assault by strangulation. Thereafter, a superseding indictment was issued for the same offenses.
 

 The case came on for trial at the 2 May 2016 session of Wake County Criminal Court before the Honorable Graham Shirley, Superior Court Judge presiding. On 9 May 2016, the jury returned a verdict of guilty against defendant for felony child abuse inflicting serious bodily injury and a verdict of not guilty for strangulation.
 

 Defendant was sentenced to 127 to 165 months imprisonment and ordered to undergo a substance abuse assessment, a mental health
 
 *393
 
 assessment, other psychological assessments, as well as anger management or psychological counseling. Defendant entered notice of appeal in open court.
 

 _________________________
 

 On appeal, defendant contends the trial court committed plain error in allowing a State's expert to vouch for the complainant's credibility. In the alternative, defendant argues he was denied effective assistance of counsel where counsel did not object to the improper vouching of the State's expert witness.
 

 In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.
 

 N.C. R. App. P. 10(a)(4) (2017);
 
 State v. Goss
 
 ,
 
 361 N.C. 610
 
 , 622,
 
 651 S.E.2d 867
 
 , 875 (2007). Plain error arises when the "error is a '
 
 fundamental
 
 error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' "
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 516-17,
 
 723 S.E.2d 326
 
 , 333 (2012) (quoting
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) ). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993) (citation omitted).
 

 A.
 
 Expert Vouching for the Truthfulness of a Witness
 

 "The question of whether a witness is telling the truth is a question of credibility and is a matter for the jury alone."
 
 State v. Solomon
 
 ,
 
 340 N.C. 212
 
 , 221,
 
 456 S.E.2d 778
 
 , 784 (1995) (citing
 
 State v. Ford
 
 ,
 
 323 N.C. 466
 
 , 469,
 
 373 S.E.2d 420
 
 , 421 (1988) ). Indeed,
 

 [o]ur appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence. However, those cases in which the disputed testimony concerns the credibility of a witness's accusation of a defendant must be distinguished from cases in which the expert's testimony relates to a diagnosis based on the expert's examination of the witness.
 

 State v. Bailey
 
 ,
 
 89 N.C.App. 212
 
 , 219,
 
 365 S.E.2d 651
 
 , 655 (1988) (internal citations omitted).
 

 *394
 
 In the instant case, defendant made no objection at trial to the expert testimony given by Holly Warner ("Nurse Warner"), a nurse practitioner who worked with the Safe
 
 *308
 
 Child Advocacy Center in 2013. Now, on appeal, defendant claims it was plain error to allow Nurse Warner's testimony. We disagree.
 

 After Perry was placed in foster care, he was evaluated by Nurse Warner. She reviewed his medical records from two emergency room visits, observed an interview he gave where he described two significant events involving physical abuse, and then spoke with Perry about injuries sustained in those events. She also took photos of the injuries, which were admitted into evidence at trial. Nurse Warner testified on direct in relevant part as follows:
 

 Q. ... [W]hat, if anything, did [Perry] tell you about how he received those injuries?
 

 A. He told me that [defendant] hit him on the head and the arms and legs, was hitting him with a baseball bat and a flashlight.
 

 Q. At any point did you ask him about the history that was presented to the hospital, that is the bunk bed and hitting on various objects.
 

 A. Yes.
 

 Q. What did he say about that?
 

 A. He said that [defendant] went with him to the hospital to make sure that the hospital didn't know what happened.
 

 ....
 

 Q. And at some point, either yourself or with the interview, did [Perry] indicate to you how he received those injuries [to his eyes (the burst blood vessels) ]?
 

 A. He did.
 

 Q. What did he say?
 

 A. He said that after school [defendant] came into [his] room screaming and yelling. [Defendant] was behind [him] with his arm around [his] neck. [He] felt like [he] could not breathe or swallow.
 

 [Perry] then says [defendant] left the room and he went to sleep. He reports when he woke up, [his] face was
 
 *395
 
 swollen and [he] had little red dots on [his] face and on [his] eyes.
 

 He says his mother and [defendant] took him to the hospital a few days later because the red spots in his eyes started turning yellow and [his] mom thought [he] had jaundice.
 

 ....
 

 Q. And with respect to [Perry], and in terms of the physical concerns he had described to you, did you come to some sort of medical diagnosis for that?
 

 A. Yes.
 

 Q. What was that?
 

 A. That the injuries were due to child physical abuse.
 

 Here, Nurse Warner was relating what Perry told her about his injuries and what she observed during her evaluation of him before she gave a medical opinion based on her medical diagnosis that Perry was abused. When she related Perry's disclosure about how his injuries occurred and who caused the injuries, she was describing her process of gathering necessary information to make a medical diagnosis. Contrary to defendant's argument, she was not commenting on Perry's credibility.
 

 On cross-examination, Nurse Warner testified that Perry "disclosed being abused by [defendant]," and that she took pictures of the injuries Perry told her were inflicted by defendant. When asked if she had anything "professionally to draw conclusions as to who perpetuated the physical abuse," Nurse Warner responded that she was not present when Perry was injured and that the "evidence [she] [had] is what the child reported and his reported history of the injuries were corroborated by his medical visits and injuries." Nurse Warner stated her professional opinion was that "the child's disclosure matche[d] the injuries he sustained," and "[w]hat the child said is the evidence. That is the evidence that we have." Nurse Warner did not state that Perry was believable, credible, or telling the truth. Thus, defendant's claim that Nurse Warner improperly vouched for Perry's credibility is not supported by her direct or cross-examination testimony. Accordingly, the trial court committed no error, and certainly no plain error, in allowing this testimony.
 

 Even assuming
 
 arguendo
 
 the trial court erred, there is not a reasonable probability that the jury would have reached a
 
 *309
 
 different result had counsel objected at any point during Nurse Warner's testimony.
 
 *396
 

 See
 

 Lawrence
 
 ,
 
 365 N.C. at 516-17
 
 ,
 
 723 S.E.2d at 333
 
 . Indeed, the evidence presented at trial of defendant's guilt was overwhelming: three eyewitnesses, including Perry, his mother, and his sister Nancy, testified in great detail about the injuries inflicted on Perry by defendant the night of the cookout, and hospital reports also documented the injuries, which included an injured head, knee, and fractured elbow. Defendant's argument is overruled.
 

 B.
 
 Ineffective Assistance of Counsel
 

 In the alternative, defendant contends he was denied effective assistance of counsel when his trial counsel did not object to what defendant argues was improper vouching by an expert witness. Based on
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 694,
 
 104 S.Ct. 2052
 
 , 2068,
 
 80 L.Ed.2d 674
 
 , 698 (1984), defendant would have to show counsel's actions were prejudicial to his defense. In other words, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
 

 Id.
 

 However, because we have concluded that Nurse Warner's expert testimony did not constitute improper vouching, there is no viable argument that the performance of defendant's counsel was deficient. Defense counsel's "failure" to object to testimony that was not objectionable cannot serve as the basis for a viable ineffective assistance of counsel claim. Accordingly, defendant was not denied effective assistance of counsel, and this argument is overruled.
 

 NO ERROR.
 

 Judges CALABRIA and STROUD concur.
 

 [1]
 

 A pseudonym will be used for the minor child victim.
 

 [2]
 

 A pseudonym will also be used to refer to Perry's sister, who was fourteen years old at the time of trial.