STATE OF NORTH CAROLINA v. THOMAS FRANCIS QUARG

No. 164PA92

(Filed 2 July 1993)

**1. Evidence and Witnesses § 2185 (NCI4th) — indecent liberties — opinion testimony not properly disclosed on discovery — door not opened on cross-examination — admission not prejudicial**

There was no prejudicial error in an indecent liberties prosecution where defendant requested that the State voluntarily produce copies of all results or reports of physical or mental examinations, tests, measurements or experiments; the State provided defendant with a copy of the initial report

of Braun, the clinical social worker who was the unit director of the mental health center and who prepared a screening/admission assessment; the State called Braun to the stand during trial and implicitly qualified him as an expert in child sexual abuse; Braun testified from memory regarding his initial screening and the admission assessment; defendant objected to a question concerning whether Braun had diagnosed the victim as suffering from any type of trauma; the trial court ruled his testimony inadmissible on the grounds that the State failed to provide defendant with a final report or any progress notes of subsequent interviews; defendant cross-examined Braun concerning a specific statement by the victim to Braun; and the State was allowed on redirect examination to question Braun extensively concerning statements made to him by the victim's mother and to elicit his opinion as to whether the victim suffered from post-traumatic stress disorder. Defendant's limited cross-examination did not open the door for Braun's opinion testimony concerning PTSD and, assuming that the basis for the ruling was that defendant opened the door, the admission of the evidence was error. However, in light of the substantive and corroborative testimony from other witnesses, defendant has not demonstrated a reasonable possibility that a different result would have been reached absent the disputed portion of Braun's testimony.

Am Jur 2d, Expert and Opinion Evidence § 97.

2. Evidence and Witnesses § 2342 (NCI4th) — indecent liberties — opinion testimony — limiting instruction

There was no error in an indecent liberties prosecution where the court admitted testimony that the victim was suffering from post-traumatic stress disorder and instructed the jury that the testimony was admitted to show the basis for the treatment which the witness administered to his patient and not to prove the truth of the matters stated. The instruction was not error in context because the witness had seen the victim five times and had prescribed treatment goals for her. Although it was held after this trial that expert opinion testimony concerning PTSD could be admitted for purposes of corroboration, the rule has long been that an instruction limiting admissibility to corroboration is not required unless counsel specifically requests such instruction. The limiting instruction given was favorable to defendant and, since the record

is silent as to a request for a limiting instruction on corroboration, the failure to give such an instruction was not error.

**Am Jur 2d, Expert and Opinion Evidence § 244.**

**3. Evidence and Witnesses § 3171 (NCI4th) — indecent liberties — statements of victim — admitted for corroboration — minor discrepancies — no error**

There was no error in an indecent liberties prosecution in the admission of hearsay testimony concerning the victim's statements to her mother and a deputy sheriff for corroborative purposes where discrepancies were minor and insignificant and the court repeatedly instructed the jury that the testimony was being offered for purposes of corroborating the victim's earlier testimony and that they were to consider only so much of it as did in fact corroborate earlier testimony.

**Am Jur 2d, Witnesses §§ 641 et seq.**

**4. Criminal Law § 113 (NCI4th) — indecent liberties — discovery — statement by defendant not furnished — trial recessed and witnesses interviewed — no abuse of discretion**

There was no abuse of discretion in an indecent liberties prosecution from the failure of the State to furnish to defendant, upon proper request, a statement of defendant where the trial judge recessed the trial for the length of time the attorneys stated they needed and required the State's attorney to interview the State's witnesses to ascertain and furnish to defendant any additional statements that defendant allegedly made and also permitted defense counsel to interview State's witnesses. The sanctions, if any, to impose for the State's failure to comply with discovery is in the discretion of the court.

**Am Jur 2d, Depositions and Discovery §§ 426, 427.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 106 N.C. App. 106, 415 S.E.2d 578 (1992), setting aside judgments entered upon defendant's conviction of five counts of indecent liberties by Small, J., at the 8 January 1991 Criminal Session of Superior Court, Dare County and awarding defendant a new trial. Heard in the Supreme Court 14 January 1993.

Michael F. Easley, Attorney General, by Angelina M. Maletto, Assistant Attorney General, for the State-appellant.

W. Mark Spence for defendant-appellee.

PARKER, Justice.

Defendant, upon a proper bill of indictment, was convicted of five counts of committing indecent liberties upon a minor in violation of N.C.G.S. § 14-202.1. The trial judge consolidated two counts for judgment and sentenced defendant to six years' imprisonment in that judgment; for the remaining three counts, also consolidated for judgment, defendant received an eight-year sentence. On defendant's appeal the Court of Appeals found reversible error. This Court having allowed the Attorney General's petition for discretionary review, the issue now before the Court for review is whether the admission of expert opinion testimony that the prosecuting witness suffered from post-traumatic stress disorder was error. We hold that admission of the evidence was not prejudicial error and reverse the Court of Appeals' decision granting defendant a new trial.

The record reflects that the female victim (herein "S.W.") was seven years old and that the incidents for which defendant was charged occurred on five different occasions between 18 December 1989 and 6 January 1990. In August of 1990, S.W.'s mother took her to the Albemarle Mental Health Center in Edenton, North Carolina because S.W. "wouldn't sleep in her room anymore all by herself. She was afraid to go outside and play. . . . She just seemed afraid." Following an initial screening on 6 August 1990 and an admission assessment on 13 August 1990, Steven N. Braun, a clinical social worker who was also the unit director, prepared a screening/admission assessment report, dated 13 August 1990, which (i) indicated a provisional diagnosis of post-traumatic stress disorder (primary) and adjustment disorder (principal and primary) and (ii) proposed an estimated six months for treatment. This report also outlined the victim's social, family and medical history and her history with respect to the incidents with which defendant was charged. Braun treated S.W. on three more occasions following the preparation of this initial report but prepared no further reports or summaries.

During discovery, defendant requested the State voluntarily to produce copies of "[a]ll results or reports of physical or mental

examinations, tests, measurements or experiments made in connec-
tion with this case which are known to the State or which may
become known to the State, as provided by N.C. Gen. Stat.
15A-903(e)." In response, the State provided defendant with a copy
of Braun's initial 13 August 1990 report.

At trial, the State called Braun to the stand and implicitly
qualified him as an expert witness in child sexual abuse. He testified
from memory regarding his initial screening of the victim and the
admission assessment. Defendant objected to a question posed to
Braun as to whether he had diagnosed the victim as suffering
from any type of trauma. Following *voir dire*, the trial court ruled
Braun's testimony inadmissible on the grounds that the State failed
to provide defendant with a final report or any progress notes
of Braun's subsequent interviews with the child and these materials
could not be provided in a timely manner at trial.

Thereafter, on cross-examination, defendant questioned Braun
concerning a specific statement S.W. made to Braun which he had
noted in the 13 August 1990 report. The State, on redirect examina-
tion, was allowed, over objection, to question Braun extensively
concerning statements made to him by the victim's mother and
to elicit his opinion as to whether the victim suffered from post-
traumatic stress disorder (herein "PTSD").

[1] On appeal, defendant maintains the trial court erred in admit-
ting the opinion testimony which was not properly disclosed in
response to his discovery requests. The State contends defendant
opened the door to this line of inquiry with his questions on cross-
examination. The Court of Appeals ruled that it was error for
the trial court to have allowed Braun's testimony since it related
to a final diagnosis derived from interviews subsequent to those
in the report and since the limited questions posed by defendant
were insufficient to open the door for this testimony. "This ques-
tioning did not cover new matter so as to allow the State on
redirect to question Braun about his diagnosis of PTSD. The admis-
sion of Braun's opinion testimony regarding his final diagnosis,
after having been held inadmissible for failure to comply with
discovery, was error." *State v. Quarg*, 106 N.C. App. 106, 110,
415 S.E.2d 578, 581 (1992).

Before this Court, the State, emphasizing that the questions
asked on redirect examination of Braun related solely to the 13
August 1990 screening/admission assessment report, argues that

## STATE v. QUARG

[334 N.C. 92 (1993)]

defendant opened the door to this examination by cross-examining Braun about statements in the report. We note initially that the record is silent as to the trial judge's reasoning for his ruling allowing Braun's testimony, over objection, on redirect examination after his initial ruling that Braun's testimony was inadmissible for the State's failure to comply with discovery. We can only speculate whether the trial judge reconsidered his initial ruling or determined that the defendant had opened the door.

Assuming arguendo, as the State asserts, that the basis of the ruling was that defendant opened the door, we agree with the Court of Appeals that admission of the evidence was error. The questions defendant asked on cross-examination after establishing Braun prepared the screening/admission assessment report were as follows:

Q August 13. And you stated in that report that [S.W.] was able to talk about the incident and anxious to talk about the incident; is that right?

A She had anxiety. That's for sure.

Q And you reported in there in quotation marks that [S.W.] said, "I think this is what my mother wants me to talk to you about. And she said it would help me."

A I think the purpose of her statement there was—

Q Did she say that, say what you put in your report?

A Yes, she did.

[Colloquy between court and witness and question read back]

A I think that [S.W.] in saying that, what had preceeded [sic]—[S.W.'s] comments preceeding [sic] that were that she was frightened to confront the alleged perpetrator in court. And she thought this would help her reduce her fear.

Q [By defense counsel] Okay. It says the child had some insight into the nature of her difficulties, and although anxious, she was able to talk about the incident and her feelings concerning it. She does admit that she was worried about seeing this man and about facing him in court. About this she said, "I think, this is what my mother wants me to talk to you about. And she said, it would help me"; is that what her report said?

A Yes, sir. And that was the reason for referral. That was the reason she was here.

On direct examination before *voir dire*, Braun had testified that S.W. had "arrived with her family for treatment on a referral from Shirley Harrell [the victim and witness assistant]," and in response to a question whether he knew why S.W. was there, Braun had stated: "I had a pretty good idea, but they explained the reason they were there. The mother and the daughter both explained that she was having a great deal of emotional distress dealing with being sexually abused." Confronted with this testimony, defendant was entitled to attempt to soften its impact by questioning Braun about the inconsistent statement in his report that was more limited in scope than his testimony at trial. In our view, defendant's limited cross-examination did not open the door for Braun's opinion testimony concerning PTSD. The State has cited no authority to support its position that defendant opened the door; and this case is distinguishable from *State v. Bright*, 320 N.C. 491, 358 S.E.2d 498 (1987), where the prosecutor asked the witness to explain on redirect examination the same question defendant had asked the expert witness on cross-examination. Furthermore, the State's assertion that the questions on redirect examination were limited to the initial assessment interview with the victim is not supported by the record. Certain of the assistant district attorney's questions were limited to that particular interview, but the critical question relative to Braun's opinion on PTSD contained no time limitation. The question asked was:

Again, I ask you, based on what you observed about [S.W.] and the things that she told you, did you diagnosis her as suffering from any type of trauma?

Over objection, the witness answered affirmatively and then stated that he "gave her a diagnosis of post-traumatic stress disorder and adjustment disorder." The 13 August 1990 screening/admission assessment report contained only a "provisional diagnosis." On *voir dire* Braun explained that a provisional diagnosis is required for an admission assessment preliminary to establishing treatment goals. Braun had also testified on *voir dire* that he had reviewed his file including his progress notes before coming to court, but had not brought them with him. The import of this testimony that the victim suffered from PTSD was that this determination was a final diagnosis based on his entire series of consultations with

the victim. For these reasons we agree with the Court of Appeals' analysis that defendant did not open the door to the expert testimony, and admission of Braun's opinion concerning PTSD was error.

We do not agree, however, with the Court of Appeals' determination that the error entitled defendant to a new trial. "The defendant is not entitled to a new trial based on trial errors unless such errors were material and prejudicial," *State v. Alston*, 307 N.C. 321, 339, 298 S.E.2d 631, 644 (1983), and the burden of showing prejudice is on the defendant. *Id.* The statutory test for errors not relating to a right under the Constitution of the United States is that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." N.C.G.S. § 15A-1443(a) (1988). Defendant has not carried his burden of showing that he was prejudiced by admission of the expert's opinion testimony.

The victim testified at length as to the specifics of each occasion of abuse including defendant's statements threatening both her and her father's safety if she related the events to anyone and his question to her if she knew about sex. She further testified to the best of her ability as to the date of each offense and she identified the defendant in open court. The victim's mother and grandmother, the deputy sheriff, and the emergency room nurse also offered substantive and corroborative testimony which supported elements of the victim's allegations.

The mother testified that, during the afternoon of 6 January 1990, she heard defendant call her daughter into the garage; she saw defendant close and lock the garage door with her daughter inside; a few moments later, the door opened and she saw defendant's hands on her daughter's back; and she sensed something was wrong from her daughter's behavior when S.W. came out of the garage. The child was hanging her head and wringing her hands. The mother reiterated what the child told her at that time and later that evening about the instances of abuse including the sex question and the threats. The mother further testified that, later that same night, she overheard defendant offer her husband $1,200 and state: " 'Jerry, let this make things right. Let us be friends again. . . . This is $1,200. Please just let this make things right.' " The victim's grandmother testified that her granddaughter suffered severe crying spells following the incidents and became hysterical when she told her about the instances of abuse. Deputy

Sheriff James Suggs testified that the victim on two occasions weeks apart consistently related to him the details of defendant's abuse. Nurse Susan Pearson, who treated S.W. at Albemarle Hospital in Elizabeth City, North Carolina, on 7 January 1990, testified that S.W. told her "[h]e [defendant] put his hands up my skirt and put his hand down my panties" on several occasions and that "[h]e said he would shoot daddy and hurt me if I told my parents." Finally, Jason Evans, a tenant of the victim's parents, testified he was also present on the night defendant offered the victim's father a sum of money and stated "[l]et's make it right and be friends again."

In order to convict under N.C.G.S. § 14-202.1, the State must prove:

> (1) the defendant was at least 16 years of age, (2) he was five years older than his victim, (3) he willfully took or attempted to take an indecent liberty with the victim, (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Rhodes*, 321 N.C. 102, 104, 361 S.E.2d 578, 580 (1987) (quoting *State v. Hicks*, 79 N.C. App. 599, 339 S.E.2d 806 (1986)). "The fifth element, that the action was for the purpose of arousing or gratifying sexual desire, may be inferred from the evidence of the defendant's actions." *Rhodes*, 321 N.C. at 105, 361 S.E.2d at 580. In the instant case, the evidence is sufficient to warrant the inference that defendant, a thirty-six year old male, wilfully took indecent liberties with a seven year old female child for the purpose of arousing or gratifying sexual desire. The uncorroborated testimony of the victim is sufficient to convict under N.C.G.S. § 14-202.1 if the testimony establishes all of the elements of the offense. *State v. Vehaun*, 34 N.C. App. 700, 705, 239 S.E.2d 705, 709 (1977), *cert. denied*, 294 N.C. 445, 241 S.E.2d 846 (1978).

In light of the substantive and corroborative testimony from other witnesses, defendant has not demonstrated a reasonable possibility that a different result would have been reached absent the admission of the disputed portion of Braun's testimony. The error is, therefore, harmless.

[2]  We next address the appropriateness of the trial court's limiting instruction as to Braun's opinion testimony in order to clarify the

Court of Appeals' opinion. At trial the trial court gave the following instruction:

> Members of the jury, the testimony that is being elicited from this witness at this time about the symptoms that the witness, [S.W.], gave to him and that she was experiencing and was the purpose of the treatment is offered not to prove the truth of the matters stated in those symptoms, but to show the basis of the treatment that the witness administered to his patient.

In context, this instruction was not error. At the time this instruction was given the assistant district attorney was examining Braun on redirect examination and inquiring about what the victim had told him in his interview with her. This Court has held that statements made for purposes of obtaining treatment to physicians, psychologists, and social workers, if qualified as experts, are admissible as substantive evidence pursuant to N.C.G.S. § 8C-1, Rule 803(4). *See State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). While the victim was referred to Braun by the district attorney's victim and witness assistant, the evidence showed that Braun had seen S.W. five times and had prescribed treatment goals for the victim. Hence, the limiting instruction was, in fact, favorable to defendant at the point in the trial where it was given. The record is somewhat confusing because in response to the question "What else did she tell you about during that time, if you recall?" Braun answered, "She had a typical syndrome or pattern of feeling very guilty about—." Thereafter, the State asked the question calling for an opinion as to whether the victim suffered from PTSD. The record does not reflect whether defendant requested a further limiting instruction as the bench conference was not recorded.

Subsequent to the trial of this action, this Court decided *State v. Hall*, 330 N.C. 808, 412 S.E.2d 883 (1992), in which the Court held that expert opinion testimony concerning PTSD could, under certain circumstances, be admitted for the purposes of corroboration, but "[i]n no case may the evidence be admitted substantively for the sole purpose of proving that a rape or sexual abuse has in fact occurred." *Id.* at 822, 412 S.E.2d at 891. The rule, however, in this State has long been that an instruction limiting admissibility of testimony to corroboration is not required unless counsel specifically requests such instruction. *Smith*, 315 N.C. at 82, 337 S.E.2d at 838. We hold, therefore, that the limiting instruction given was

favorable to defendant, and that since the record is silent as to a request for a limiting instruction on corroboration respecting the opinion testimony, the failure to give such an instruction was not error.

Finally, defendant brought forward three additional assignments of error on which the Court of Appeals did not rule. In our discretion, we have elected to consider these assignments prior to determination by the Court of Appeals and, having reviewed them, find these assignments to be without merit.

[3]  In the first of these assignments of error, defendant contends that the trial court erred in admitting hearsay testimony for corroborative purposes which contradicted rather than corroborated the victim's testimony. We have carefully reviewed the alleged errors, and find that although inconsistencies exist between S.W.'s testimony and that of her mother and the deputy sheriff, the discrepancies are minor and not so significant as to render the testimony reversible error. *State v. Higginbottom*, 312 N.C. 760, 324 S.E.2d 834 (1985). Moreover, the trial court repeatedly instructed the jury, even without a request from defendant, that the testimony was being offered for purposes of corroborating the victim's earlier testimony and that they were to consider only so much of it as did in fact corroborate earlier testimony. The victim's testimony and that of the corroborating witnesses were consistent in all material respects. All the testimony was that five incidents of abuse occurred, some shortly before Christmas and some after Christmas, that on each occasion defendant had placed the victim on a counter in the garage and had run his hands up her dress and under her underpants, and that defendant made threats against the victim's father and the victim if S.W. told anyone what had occurred.

[4]  The other assignments of error on which the Court of Appeals did not rule were that (i) the trial court erred in allowing into evidence statements allegedly made by defendant that had not been furnished to defendant upon proper request in discovery prior to trial, and (ii) the trial court erred in denying defendant's motion to dismiss, for mistrial or for a continuance for failure of the State to provide discovery pursuant to N.C.G.S. § 15A-903. Our review of the transcript and record discloses that the only statement not furnished in substance to defendant prior to trial related to a confrontation on 7 January 1990, early in the morning after the last incident occurred, in which, according to the mother's

testimony, defendant yelled at the victim, accusing her of lying; and the victim stood up to him by saying, " 'I am not lying, Tom, and you know I am not.' " When this allegation came out at trial, the trial judge recessed the trial for the length of time the attorneys stated they needed and required the State's attorney to interview the State's witnesses to ascertain and furnish to defendant any additional statements that defendant allegedly made and also permitted defense counsel to interview State's witnesses. What sanctions, if any, to impose for the State's failure to comply with discovery is in the discretion of the trial court. This Court has previously stated:

> [T]he State's failure to comply with a discovery order pursuant to N.C.G.S. § 15A-903 will not automatically require the exclusion of the undisclosed evidence. *State v. Misenheimer*, 304 N.C. 108, 282 S.E. 2d 791 (1981); *State v. Stevens*, 295 N.C. 21, 243 S.E. 2d 771 (1978). A variety of sanctions is authorized under N.C.G.S. § 15A-910 for failure to comply with a discovery order. The choice of which sanction to apply, if any, rests in the sound discretion of the trial court and is not reviewable absent a showing of an abuse of that discretion. *State v. King*, 311 N.C. 603, 320 S.E. 2d 1 (1984); *State v. Alston*, 307 N.C. 321, 298 S.E. 2d 631 (1983); *State v. Stevens*, 295 N.C. 21, 243 S.E. 2d 771 (1978). A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 741 (1985).

*State v. Gladden*, 315 N.C. 398, 412, 340 S.E.2d 673, 682, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). In the present case, we find no abuse of discretion.

For the foregoing reasons, defendant received a fair trial, free from prejudicial error.

REVERSED.