An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-988
NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA

v.                              Catawba County
                                No. 11 CRS 5731

WILLARD MARSHALL TAYLOR, JR.


Appeal by defendant from judgment entered 7 March 2013 by Judge Timothy S. Kincaid in Catawba County Superior Court. Heard in the Court of Appeals 19 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Jill A. Bryan, for the State.*
>
> *Dianne Jones McVay, for defendant-appellant.*


HUNTER, Robert C., Judge.

Defendant Willard Marshall Taylor, Jr. appeals the judgment entered after a jury found him guilty of one count of taking indecent liberties with a child. On appeal, defendant argues that: (1) the trial court committed plain error when it allowed a physician's assistant and an investigator for Child Protective Services to testify about statements made to them by the victim's mother, (2) the trial court committed plain error by

allowing a State's witness to vouch for the victim's credibility, and (3) the trial court erred when it denied defendant's motion to dismiss for insufficiency of the evidence.

After careful review, we find no error.

**Background**

On 1 August 2011, defendant was indicted in Catawba County on one count of taking indecent liberties with his granddaughter, M.T. The offense was alleged to have occurred between 1 November and 31 December 2010 when M.T. was five years old.

The State's evidence at trial tended to establish the following: M.T.'s parents, Brad—defendant's son—and Cara,[1] were separated and living apart in October 2009. At the time of the alleged abuse, Brad resided with defendant. Although M.T. continued to reside with Cara, an informal custody agreement provided that Brad would keep M.T. every other weekend.

Sometime around the end of 2010 and the beginning of 2011, after a weekend visit with Brad, Cara first became concerned about M.T.'s behavior after M.T. refused to allow her in the bathroom to help her shower or dry off. Cara also claimed that M.T. began "humping" a stuffed animal. M.T. allegedly told Cara that her vaginal area hurt and burned. After one weekend visit,

---

[1] For purposes of this opinion, to protect the identity of the minor child, we have used initials and pseudonyms for the victim and her parents.

Cara examined M.T. and saw vaginal discharge; M.T.'s vagina also appeared "really red." When Cara asked M.T. what happened, M.T. responded that defendant put his finger in her "rose." M.T. referred to her genital area as her "rose."

On 4 February 2011, Cara took M.T. to Gary Poston ("Poston"), a physician's assistant at a local medical clinic. Poston testified that Cara told him that M.T. accused her grandfather of putting his finger in her vagina. After learning of the possibility of sexual abuse, Poston declined to examine M.T.; instead, he referred Cara to the Department of Social Services ("DSS") for follow-up as he had been trained to do in alleged sexual abuse situations.

After leaving the clinic, Cara took M.T. directly to the Newton Police Department where she met with Child Protective Services' investigators Thomas Neff ("Neff") and Brian Cloninger ("Cloninger"). Cara told them what M.T. claimed defendant had done. Neff and Cloninger arranged an interview and medical exam for M.T. at the Children's Advocacy Protection Center ("CAPC").

On 9 February 2011 at CAPC, Beth Osbahr ("Osbahr"), a pediatric nurse practitioner, performed the medical exam and examined M.T. for signs of sexual abuse. Osbahr testified that she did not observe any physical evidence of sexual abuse during M.T.'s examination, but the time-frame between the alleged abuse and examination would make it unlikely to find physical

evidence. After the medical exam, Neff, a trained forensic interviewer, performed a recorded interview with M.T.; no one else was in the room with them. During the interview, M.T. claimed that defendant had touched her vagina while she was at defendant's home. A recording of that interview was played to the jury at trial.

Following the CAPC interview and examination, Brad sought an additional interview of M.T. in his presence, which was later conducted by Adrienne Opdyke ("Opdyke"). This later interview was conducted at the District Attorney's office with M.T., Brad, Opdyke, and the district attorney present. At trial, Opdyke testified as an expert witness in the field of forensic interviewing. She testified that M.T. told her that defendant touched her "rose" in the bathroom of his home. Opdyke also testified as to the proper method of conducting a forensic interview with a child.

At trial, the following witnesses testified on defendant's behalf: his two sons, Brad and Justin; defendant's wife, Rhonda; and defendant himself. All four defense witnesses testified that after Neff's interview with M.T., each questioned M.T. about the alleged sexual abuse even though Neff had instructed them not to. All four defense witnesses claimed that M.T. denied that defendant touched her; instead, M.T. alleged that Cara told her to say that she had been touched. Brad recorded

one of these conversations he had with M.T. where she claimed that "Peepaw didn't touch" her. A transcript of the recording was admitted into evidence at trial. On rebuttal, Opdyke testified that she had concerns about Brad's recording of his interview with M.T. In her opinion, Opdyke claimed that several of his questions were ambiguous and confusing.

On 7 March 2013, a jury found defendant guilty on one count of taking indecent liberties with a child. Defendant was sentenced to a minimum of 13 months and a maximum of 16 months imprisonment. The trial court suspended the sentence, and defendant was placed on supervised probation for 36 months. Defendant gave notice of appeal in open court.

## Discussion

### A. Hearsay

Defendant first argues the trial court committed plain error by admitting testimony that constituted inadmissible hearsay. Specifically, defendant contends that Poston's and Neff's testimony concerning statements Cara made to them about what M.T. had told her constituted double hearsay. We disagree.

Defendant did not object at trial to the admission of Poston's or Neff's testimony; thus, the trial court's admission of their statements is reviewed for plain error, *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "For error to constitute plain error, a defendant must demonstrate

that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish . . . the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (citations and quotations omitted).

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Stanley*, 213 N.C. App. 545, 552, 713 S.E.2d 196, 201 (2011).

> When evidence of such statements by one other than the witness testifying is offered for a proper purpose other than to prove the truth of the matter asserted, it is not hearsay and is admissible. Specifically, statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statement was made.

*State v. Coffey,* 326 N.C. 268, 282, 389 S.E.2d 48, 56 (1990) (internal citations and quotation marks omitted).

Defendant challenges the testimony of Poston and Neff concerning statements Cara made to them about things M.T. had told her. Specifically, defendant claims that Poston's testimony that Cara told him that M.T. told her "pawpaw had touched her in the vaginal area and rubbed her very hard" and Neff's testimony that Cara told him that M.T. claimed that defendant "had touched [M.T.] in a private part" constituted inadmissible double hearsay. However, neither Cara's out-of-court statements to them nor M.T.'s out-of-court statements to

Cara constituted hearsay because neither were offered at trial as substantive truth that defendant had touched M.T. Instead, these statements were offered for a purpose other than asserting the truth of the matter asserted; they were used to explain subsequent actions by Poston and Neff. Specifically, these statements explained why Poston referred Cara to DSS and why Neff initiated an investigation into the alleged abuse. Therefore, since neither Poston's nor Neff's testimony was offered to prove the truth of the matter asserted, the out-of-court statements by M.T. and her mother were not hearsay, and the trial court did not err, much less commit plain error, in admitting Poston's and Neff's testimony.

## B. Opdyke's Testimony Regarding M.T.'s Credibility

Defendant next argues the trial court committed plain error when it allowed the State's expert witness to vouch for M.T.'s credibility. We disagree.

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." *State v. Green*, 209 N.C. App. 669, 675-76, 707 S.E.2d 715, 720 (2011); N.C. R. Evid. 702(a). However, "[i]t is fundamental to a fair trial that the credibility of the witnesses be determined by the jury . . .

[and thus] an expert's opinion to the effect that a witness is credible, believable, or truthful is inadmissible." *State v. Boyd*, 200 N.C. App. 97, 103, 682 S.E.2d 463, 468 (2009) (quoting *State v. Hannon,* 118 N.C. App. 448, 451, 455 S.E.2d 494, 496 (1995)).

Defendant argues his case is similar to *State v. Giddens*, 199 N.C. App. 115, 121-22, 681 S.E.2d 504, 508 (2009), where this Court held that the trial court committed prejudicial error when the State's witness, a DSS investigator, testified that her investigation "substantiated" that the defendant had committed the crime. *See also State v. Couser*, 163 N.C. App. 727, 730-31, 594 S.E.2d 420, 422-23 (2004) (holding that the trial court committed prejudicial error when the expert witness testified after speaking with the child that the child was "probably sexually abused"); *State v. Ryan*, __ N.C. App. __, __, 734 S.E.2d 598, 604 (2012) (concluding the trial court committed prejudicial error by allowing the expert witness to testify that "she was not concerned that the child was 'giving a fictitious story'"). Defendant contends Opdyke substantiated M.T.'s testimony through her description of her forensic interview with M.T. and her analysis of Brad's recorded interview with M.T.

However, unlike *Giddens* where the DSS investigator actually said she "substantiated" that defendant was guilty, 199 N.C. App. at 121-22, 681 S.E.2d at 508, or other cases where an

expert testifies as to the credibility of the victim, Opdyke never provided her expert opinion that M.T. had been truthful during their interview. Opdyke testified as follows:

> Q: What is the goal of the forensic interview?
>
> A: To allow the child to talk about an event, if it happened, in their own words without leading. And it has to be developmentally correct, so I'm going to the use terms and words that a six-year-old may use.
>
> Q: What efforts are made to try to get the truth from the child?
>
> A: Just by asking the open-ended questions, real open questions. You know, the best is when a child tells you the narrative form where you're not asking this -- you know, asking specific questions but open questions, Tell me what happened or tell me more about that, and then it comes directly from the child.
>
> Q: Now, specifically about the interview you did with [M.T.]. Please describe what you remember of the interview and what you did and, of course, what the child told you.
>
> A: Okay . . . I asked her to tell me about the event that happened with her pawpaw. And she told me about pawpaw touching her rose and happening in the bathroom.

Opdyke never testified as to her opinion of M.T.'s truthfulness or credibility; instead, she testified as to how she conducted her interview and what M.T. told her. Thus, her testimony does not constitute the type of victim substantiation found in *Giddens*, *Couser*, or *Ryan*. Accordingly, the trial court did not

err, much less commit plain error, in allowing her testimony into evidence.

### C. Motion to Dismiss

Next, defendant argues the trial court erred by denying his motion to dismiss for insufficiency of the evidence. Specifically, defendant contends that the State did not present sufficient evidence that defendant touched M.T. for the purpose of arousing and gratifying his sexual desires. We disagree.

"The denial of a motion to dismiss for insufficient evidence is a question of law, which this Court reviews *de novo*." *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted). A motion to dismiss is reviewed for "whether the State presented substantial evidence of each element of the offense and defendant's being the perpetrator." *State v. Hernandez*, 188 N.C. App. 193, 196, 655 S.E.2d 426, 429 (2008) (quotations omitted).

Here, defendant was charged with taking indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1. The essential elements required for conviction under N.C. Gen. Stat. § 14-202.1 are:

> (1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the

> defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Thaggard*, 168 N.C. App. 263, 282, 608 S.E.2d 774, 786-87 (2005); N.C. Gen. Stat. § 14-202.1 (2011).

Defendant only challenges the third and fifth elements on appeal. First, defendant argues that the State did not present substantial evidence that he willfully took an indecent liberty with M.T. This Court has continuously held that "[t]he uncorroborated testimony of the victim is sufficient to convict under N.C.G.S. § 14-202.1 if the testimony establishes all of the elements of the offense." *State v. McClary*, 198 N.C. App. 169, 175, 679 S.E.2d 414, 419 (2009) (quoting *State v. Quarg*, 334 N.C. 92, 100, 431 S.E.2d 1, 5 (1993)). During defendant's trial, M.T. testified that defendant pulled down her pants and put his finger in her vagina while M.T. was visiting defendant's home. Moreover, the State provided additional witness testimony that corroborated M.T.'s allegations. Thus, the State presented substantial evidence that defendant willfully took an indecent liberty with M.T.

Next, defendant argues the State failed to present substantial evidence that his actions were for the purpose of sexual arousal or gratification. "The requirement that defendant's actions were for the purpose of arousing or gratifying sexual desire may be inferred from the evidence of

the defendant's actions." *McClary*, 198 N.C. App. at 174, 679 S.E.2d at 419 (holding an inference of sexual gratification was not in error when defendant only sent the victim letters but never had sexual intercourse with the victim). Here, M.T. testified that defendant actually carried out the sexual act of inserting his finger into M.T.'s vagina. Such evidence was sufficient to permit the jury to infer that defendant's purpose in doing so was to arouse himself or to gratify his sexual desire. *See generally State v. Rogers*, 109 N.C. App. 491, 505-06, 428 S.E.2d 220, 228-29 (1993) (holding the evidence that the defendant touched the victim's chest and vaginal area was sufficient to permit the jury to infer that the defendant's purpose in doing so was to arouse himself or to gratify his sexual desire).

## Conclusion

Based on the foregoing reasons, defendant's trial was free from error.

NO ERROR.

Judges GEER and McCULLOUGH concur.

Report per Rule 30(e).