IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1099

Filed: 6 October 2020

Cleveland County, Nos. 16 CRS 54225-28, 54230-35

STATE OF NORTH CAROLINA

v.

BENJAMIN EDWIN THOMPSON

Appeal by defendant from judgments entered 30 January 2019 by Judge W. Todd Pomeroy in Cleveland County Superior Court. Heard in the Court of Appeals 12 August 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Lauren M. Clemmons, for the State.*

*Vitrano Law Offices, PLLC, by Sean P. Vitrano, for defendant.*

ARROWOOD, Judge.

Benjamin Edwin Thompson ("defendant") appeals from judgments entered on his convictions for statutory sexual offenses with children, sexual activity by a substitute parent or custodian, and sale or delivery of controlled substances to a minor. Defendant argues the trial court plainly erred by admitting expert testimony about one victim's PTSD without a limiting instruction. Defendant also requests that this Court grant him a *writ of certiorari* to determine whether the trial court erred in

ordering him to submit to satellite-based monitoring for a lifetime and for ten years. For the following reasons, we affirm in part and reverse in part.

## I.     Background

On 10 October 2016, a grand jury indicted defendant on several charges arising out of offenses against the minor children A.W. and A.B.[1]  Defendant was indicted on two counts of statutory sexual offenses with a child against 12-year-old A.W., two counts of a sex act by a substitute parent or custodian, and two counts of selling or delivering controlled substances to a minor under 13 years of age. Regarding 13-year-old A.B., defendant was indicted on two counts of statutory sexual offenses with a child under 15 years of age and two counts of selling or delivering controlled substances to a minor under 16 years of age but more than 13 years of age. The matter came on for trial on 22 January 2019.

The State's evidence at trial tended to show the following.  A.W. is defendant's step-daughter and the best friend of A.B.  When A.W. was 12 and A.B. was 13, defendant provided them with alcohol, Xanax, and marijuana on several occasions. Defendant also sent the girls inappropriate messages through text and on Snapchat. In one such message, defendant insisted A.W. "owe[d] [him] a finger f***." In another, defendant requested that A.B. send him nude photos.  A.W. testified that defendant on multiple occasions put his hand down her pants and rubbed and penetrated her

---

[1] Initials are used to protect the identities of the juveniles and for ease of reading.

vagina with his fingers. A.B. gave a similar account of defendant touching her in the same manner.

The State introduced into evidence a number of messages police recovered from A.W.'s phone which corroborated her account, including several of the inappropriate messages from defendant. Several witnesses also corroborated A.W.'s and A.B.'s accounts. A.W.'s mother saw a text message from defendant to A.W. saying "you owe me a finger f***" and telling her to use Snapchat to communicate because they were "safer on there." In addition, A.B.'s mother read an entry in A.W.'s diary in which A.W. wrote that "Ben was always trying to look at their p****** and Ben was always . . . trying to finger f*** them[.]" When first confronted by their mothers about whether something was going on with defendant, A.W. and A.B. initially lied about the nature of their interactions with him. At the direction of defendant, A.W. and A.B. told their mothers that "finger f***" meant "flipping the bird." However, A.W.'s step-mother and her friend D.D. both testified A.W. confided in them about the things defendant would do and say to her. Detective Jessica Woosley of the Cleveland County Sherriff's Department testified that A.W. and A.B. again recounted the sexual abuse during investigative interviews.

The State also presented testimony of A.W.'s therapist, Jessica Talbert ("Talbert"), who was tendered as an expert licensed in clinical therapy in the area of assessment an,d treatment of children and adolescents in trauma. A.W. was referred

to Talbert because she was cutting herself, having trouble functioning at school, was not eating or sleeping, and expressed a desire to kill herself. After assessing A.W., Talbert diagnosed her with post-traumatic stress disorder ("PTSD") and major depressive disorder. Talbert further testified that over the course of treatment A.W. discussed the details of her sexual abuse by defendant, including that he touched her vagina, told her to touch his penis, and made inappropriate comments to her of a sexual nature. Talbert also explained that, due to feelings of shame and guilt, most children either never disclose sexual abuse or only disclose a little at a time. Defendant did not object to this testimony being used for corroborative purposes, and the trial court did not issue a limiting instruction to the jury.

Defendant presented evidence including his own testimony and that of his mother, sister, son, and a coworker. He testified that A.W. suffered from mental health issues since 2013 and would lie to her parents about things. Defendant also denied exposing himself to the girls, touching them inappropriately, or providing them with any alcohol or drugs. At the conclusion of the evidence, defendant made a motion to dismiss. The trial court denied the motion, and the jury subsequently found defendant guilty of all charges. The trial court consolidated the offenses against A.W. and A.B. into two judgments and imposed consecutive sentences of 300 to 420 months and 240 to 348 months. After considering whether satellite-based monitoring ("SBM") would be appropriate, the trial court ordered that defendant enroll in SBM

for the remainder of his natural life upon his release from prison for his offenses against A.W., and for an additional 10 years for his offenses against A.B. In addition, defendant was required to register as a sex offender and made subject to a permanent no-contact order. Defendant gave oral notice of appeal in open court. No written notice of appeal of the SBM order was filed.

## II.     Discussion

Defendant appeals from the trial court's judgments against him, arguing in the first place that the trial court plainly erred by admitting expert testimony that A.W. suffered from PTSD without giving a limiting instruction. Defendant also filed a petition for *writ of certiorari* requesting that this Court review the trial court's order imposing SBM. He argues that the trial court erred in (1) ordering him to enroll in lifetime SBM because such order was unconstitutional, and (2) ordering him to enroll in SBM for ten years without finding that he required the highest level of supervision and monitoring.

As an initial matter, we address this Court's jurisdiction with respect to the SBM order. Due to the civil nature of SBM proceedings, defendant was required to file a written notice of appeal from the SBM order pursuant to Rule 3 of the Appellate Rules of Procedure in order to properly bring the matter before this Court. *State v. Lopez,* 264 N.C. App. 496, 503, 826 S.E.2d 498, 503 (2019). Defendant failed to do so. However, "this Court has granted a defendant's petition for *writ of certiorari* to review

a meritorious challenge to an SBM order notwithstanding his failure to file a written notice of appeal—timely or otherwise." *State v. Hutchens*, 846 S.E.2d 306, No. COA 19-787, 2020 WL 3240947, at \*3 (N.C. Ct. App. June 16, 2020) (unpublished) (citing *Lopez* 264 N.C. App. at 504, 826 S.E.2d at 504). In our discretion, we grant defendant's petition and address the merits of his appeal.

A.       Expert Testimony

Defendant first argues that the trial court plainly erred in admitting expert testimony A.W. suffered from PTSD where such evidence was not accompanied by a limiting instruction. At trial, defendant objected to Talbert's testimony on hearsay grounds, arguing against its admittance "unless it's for corroboration purposes only." The trial court found the testimony admissible under Rule 803(4), and defendant did not thereafter request a limiting instruction. Because defendant did not object to the admission of the expert testimony for corroborative purposes without a limiting instruction, he failed to preserve the matter for appeal. Nevertheless, this Court reviews unpreserved evidentiary objections for plain error.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations, quotation marks, and brackets omitted).

At trial, Talbert testified that she interviewed A.W. following a referral from law enforcement and administered certain assessments and questionnaires. Talbert thereby formed an opinion that A.W. suffered from PTSD and major depressive disorder. Defendant raised no objection to this testimony being admitted for corroborative purposes, and the trial court did not instruct the jury that it should limit its consideration of the testimony for any specific purpose.

Our Supreme Court has held that "evidence that a prosecuting witness is suffering from post-traumatic stress syndrome should not be admitted for the substantive purpose of proving that a rape has in fact occurred." *State v. Hall*, 330 N.C. 808, 821, 412 S.E.2d 883, 890 (1992). However, "it may be admitted for certain corroborative purposes" or "help to explain delays in reporting the crime or to refute the defense of consent." *Id.* at 821-22, 412 S.E.2d at 890-91. "If admitted, the trial judge should take pains to explain to the jurors the limited uses for which the evidence is admitted." *Id.* at 822, 412 S.E.2d at 891. "The rule, however, in this State has long been that an instruction limiting admissibility of testimony to corroboration is not required unless counsel specifically requests such instruction." *State v. Quarg*, 334 N.C. 92, 101, 431 S.E.2d 1, 5 (1993) (citing *State v. Smith*, 315 N.C. 76, 82, 337 S.E.2d 833, 838 (1985)). *See also State v. Cox*, 303 N.C. 75, 83, 277 S.E.2d 376, 381

(1981) (holding that, "when a defendant fails to specifically request an instruction restricting the use of corroborative testimony, it is not error for the trial judge to admit the evidence without a limiting instruction.").

Here, Talbert's testimony corroborated A.W.'s testimony and explained her hesitancy and delay in reporting the crime. Trial counsel for defendant failed to request that the trial court limit the instruction to restrict the admissibility of the testimony for corroborative purposes only. We thus hold that the trial court did not err in admitting Talbert's testimony that A.W. suffered from PTSD. We note that even if a limiting instruction were required in the absence of a specific request by defendant, defendant was not prejudiced by the omission such that it would amount to fundamental error. In addition to A.W.'s own testimony, the State presented text messages and several witnesses who corroborated A.W.'s accounts of sexual abuse at the hands of defendant, including A.W.'s mother, her step-mother, A.B., A.B.'s mother, D.D., and the detective who interviewed A.W and A.B. Accordingly, we find no plain error.

### B.      Satellite-Based Monitoring Orders

### 1.      Constitutionality of Lifetime SBM

We now turn to defendant's challenges to the trial court's SBM orders. This is the latest in a series of cases in which this Court has considered the reasonableness of lifetime and long-term SBM orders imposed upon a defendant in light of recent

decisions passed down by the United States Supreme Court and our state's Supreme Court. We first address defendant's argument that the trial court erred in imposing lifetime SBM for his violations of N.C. Gen. Stat. § 14-27.28 with respect to A.W. because the State failed to establish this was a reasonable search under the Fourth Amendment.

Defendant concedes he did not raise a Fourth Amendment challenge at the sentencing hearing. Ordinarily, failure to do so would bar the matter from consideration on appeal. However, as conceded by the State, the constitutional issue of the reasonableness of lifetime SBM is nevertheless properly before this Court where, as here, the State initiates consideration of a constitutional issue and the trial court addresses it, thus preserving the issue even if the defendant did not object.[2] *Lopez*, 264 N.C. App. at 503-504, 826 S.E.2d at 510; *State v. Griffin*, 260 N.C. App. 629, 632-33, 818 S.E.2d 336, 339 (2018). We review the constitutionality of an SBM order *de novo*. *State v. Grady*, 372 N.C. 509, 521, 831 S.E.2d 542, 553 (2019) (*Grady III*).

---

[2] Defendant in his brief requested that, should we find that the matter was not preserved for review, this Court exercise its discretion under Rule 2 of the Rules of Appellate Procedure to review the issue. *See* N.C.R. App. P. Rule 2 (2020) (providing that, to "prevent manifest injustice to a party," an appellate court may suspend the rules and "order proceedings in accordance with its directions."). *See also State v. Bursell*, 372 N.C. 196, 197, 827 S.E.2d 302, 303 (2019) (upholding our invocation of Rule 2 to review an unpreserved *Grady* challenge where the State conceded that the trial court committed error relating to a substantial right). Because, for the reasons explained above, the issue here was preserved for review, we decline to apply Rule 2 as it is not necessary to do so in order to reach the matter.

North Carolina's current statutory scheme provides for "a sex offender monitoring program that uses a continuous satellite-based monitoring system" to monitor and track the locations of individuals convicted of certain sex offenses. N.C. Gen. Stat. § 14-208.40(a) (2019). This SBM program periodically reports on the individual's whereabouts, providing "[t]ime-correlated and continuous tracking of the geographic location of the subject using a global positioning system based on satellite and other location tracking technology." N.C. Gen. Stat. § 14-208.40(c)(1). In *Grady v. North Carolina*, the United States Supreme Court held that subjecting a defendant to this program constituted a Fourth Amendment search, the reasonableness of which it remanded for consideration in the first instance by North Carolina courts. 575 U.S. 306, 310, 191 L. Ed. 2d 459, 462 (2015) (*Grady I*). In doing so, the Supreme Court clarified that reasonableness "depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Id.*

Following the Supreme Court's decision in *Grady I*, this Court, in a reconsideration of *Grady* on remand, held that the State did not meet its burden of proving the imposition of SBM on that defendant was a reasonable search because "the State failed to present any evidence of its need to monitor [the] defendant, or the procedures actually used to conduct such monitoring in unsupervised cases." *State v. Grady*, 259 N.C. App. 664, 676, 817 S.E.2d 18, 28 (2018) (*Grady II*). On appeal, our

- 10 -

Supreme Court weighed the defendant's privacy interests and the nature of the intrusion against the State's interests and the effectiveness of SBM. *State v. Grady*, 372 N.C. at 538, 831 S.E.2d at 564. Though the privacy interests of recidivists like the defendant are greatly diminished, the Court noted that "mandatory imposition of lifetime SBM on an individual in defendant's class works a deep, if not unique, intrusion upon that individual's protected Fourth Amendment interests." *Id.* The Court further reasoned that, while the State certainly has a legitimate interest in protecting the public from sex offenders, "a problem justifying the need for a warrantless search cannot simply be assumed; instead, the existence of the problem and the efficacy of the solution need to be demonstrated by the government." *Id.* at 539-41, 831 S.E.2d at 564-66.

Because the State failed to show that "the [SBM] program furthers its interest in solving crimes that have been committed, preventing the commission of sex crimes, or protecting the public[,]" it did not meet "its burden of establishing the reasonableness of the [SBM] program under the Fourth Amendment balancing test required for warrantless searches." *Id.* at 544-45, 831 S.E.2d at 568. The Court expanded our holding in *Grady II* to apply not only to that defendant, but to all similarly situated individuals. Thus, its holding applied to all offenders who are unsupervised but made subject to SBM due solely to their classification as recidivists. *Id.* at 545, 831 S.E.2d at 568. The *Grady III* court made clear, however, that it's

holding "does not address whether an individual who is classified as a sexually violent predator, or convicted of an aggravated offense, or is an adult convicted of statutory rape or statutory sex offense with a victim under the age of thirteen may still be subjected to mandatory lifetime SBM[.]" 372 N.C. at 550, 831 S.E.2d at 572.

In the present case, Jason Harris ("Harris"), a probation and parole officer, testified for the State regarding the nature and scope of intrusion of the equipment currently used to monitor sex offenders under the SBM program. Harris testified that the monitor, known as an ET-1, is clamped snugly on the offender's leg, similar to how a watch attaches to a wrist. The monitor is made of rubber and has microfibers that can alert an officer to tampering if broken. It is about the size of a small pepper spray bottle, smaller than a cell phone, and weighs "[a] pound or less." It does not restrict the user's freedom of movement and can also be submerged in water, although activities such as swimming are not recommended. At all times during which it is in use, the monitor communicates with satellites and feeds information "into a base system, which tells [law enforcement] where [the user's] location is, if he leaves the location, if he's got curfews" and other such information. An officer is able to access that information "at any point in time at any day." Inside the home is a separate device called a beacon, which casts a 150-degree radius around the house and "picks up where [the user's] at if he's in that 150-degree radius." The State also noted that

a STATIC-99 assessment for defendant, which measures the likelihood an offender will commit another sex crime, assigned a score of low risk.

At the time of the sentencing hearing, defendant was almost 47 years old. If he serves only the minimum of his prison sentence, defendant will be 89 years old upon his release, at which point he would become subject to the SBM program.

In *State v. Gordon*, this Court determined that the State failed to establish the reasonableness of a lifetime SBM enrollment order under facts similar to those of the case at bar. __ N.C. App. __, __, 840 S.E.2d 907, __, *temp. stay allowed*, 839 N.C. 351, 839 S.E.2d 351 (2020). There, the defendant pleaded guilty to several charges including rape and indecent liberties with a child, and was ordered to submit to lifetime sex offender registration following a term of imprisonment of 190 to 288 months. *Id.* at __, 840 S.E.2d at 909. Defendant was convicted of an aggravated offense under N.C. Gen. Stat. § 14-208.6(1) and ordered to enroll in the SBM program for the rest of his life upon release from prison. *Id.* at __, 840 S.E.2d at 909. At the defendant's SBM hearing a probation and parole officer testified for the State describing the technical aspects of the monitoring device and the scope of the monitoring conducted by the program. *Id.* at __, 840 S.E.2d at 909-910. In addition, the State introduced into evidence a STATIC-99 risk assessment which assigned a "moderate/low" score for the defendant. *Id.* at __, 840 S.E.2d at 910.

On reconsideration in light of our Supreme Court's decision in *Grady III*, we considered the reasonableness of subjecting the defendant to a lifetime of SBM, examining the totality of the circumstances. *Gordon*, __ N.C. App. at __, 840 S.E.2d at 912. In doing so, we noted that a sufficient analysis of "the extent to which the search intrudes upon reasonable privacy expectations" was not possible given the fact it was uncertain whether the nature and extent of the information revealed under the SBM program would remain unchanged by the time the defendant was released, two decades later. *Id.* at __, 840 S.E.2d at 912 (citing *Grady III*, 372 N.C. at 527, 831 S.E.2d at 557). In addition, the State failed to provide evidence supporting the government's need to search the defendant beyond asserting the State's general interest in deterring and preventing future sex crimes. *Id.* at __, 840 S.E.2d at 913. Furthermore, we noted the State presented testimony the STATIC-99 risk assessment indicated the defendant was "not likely" to reoffend. *Id.* at __, 840 S.E.2d at 914. We thus held that "the State has not met its burden of establishing that it would otherwise be reasonable to grant authorities unlimited discretion to continuously and perpetually monitor [the] Defendant's location information upon his release from prison." *Id.* at __, 840 S.E.2d at 914.

In *State v. Griffin*, we considered whether it was reasonable for the trial court to subject "a felon on post-release supervision who was convicted of an offense involving the physical, mental, or sexual abuse of a minor" to thirty years of SBM. __

N.C. App. __, __, 840 S.E.2d 267, 273, *temp. stay allowed*, 374 N.C. 265, 838 S.E.2d 460 (2020). There, we held that while the defendant's expectations of privacy as a registered sex-offender subject to post-release supervision were "appreciably diminished," they were not "forever forfeit[ed]." *Id.* at __, 840 S.E.2d at 274. In addition, we noted that the defendant would only be on post-release supervision for five of the thirty years of SBM imposed, and his constitutional rights to privacy would thus be restored throughout the remainder of the thirty-year term. *Id.* at __, 840 S.E.2d at 274. Ultimately, we concluded that thirty years, "though less than a lifelong term, nonetheless constitutes a significantly lengthy and burdensome warrantless search[,]" and because the State "did not introduce any record evidence before the trial court showing SBM is effective in accomplishing any of the State's legitimate interests[,]" it failed to meet its burden of showing a thirty-year term of SBM was reasonable in this case. *Id.* at __, 840 S.E.2d at 275-76.

Though our Supreme Court issued temporary stay orders for *Gordon* and *Griffin*, our reasoning in those cases remains instructive, and the State concedes that *Gordon* compels us to hold that the imposition of lifetime SBM on defendant in this case constitutes an unreasonable search. Similar to the *Gordon* defendant, defendant here was not a recidivist but was rather ordered to enroll in the SBM program due to the nature of his offenses against A.W. in violation of N.C. Gen. Stat. § 14-27.28. Defendant will be imprisoned for at least four decades and, as this Court noted in

*Gordon*, it is therefore difficult to assess the reasonableness of subjecting him to SBM given the unknown future circumstances of the program. Notably, there was no evidence or individualized reasons given to support the State's need to "continually and perpetually monitor" defendant, who will be at least 89 years old upon his release from prison, and was assessed to be a low risk reoffender. Thus, "the State . . . simply failed to show how monitoring [defendant's] movements for the rest of his life would deter future offenses, protect the public, or prove guilt of some later crime." *Grady III*, 372 N.C. at 544, 831 S.E.2d at 568.

In addition, though defendant will be registered as a sex offender and placed on post-release supervision for five years for his offenses against A.W., his privacy expectations, though diminished, will not be non-existent. *See* N.C. Gen. Stat. §§ 15A-1368.2, 15A-1368.4(b1)(7) (2019); *Griffin,* __ N.C. App at __, 840 S.E.2d at 274. While there may be an argument that defendant's enrollment in the SBM program for the duration of his post-release supervision is reasonable, for the reasons discussed above, lifetime SBM is not. *See Griffin,* __ N.C. App at __, 840 S.E.2d at 274. We therefore hold that the State did not meet its burden in establishing defendant's enrollment in the SBM program for the remainder of his life constitutes a reasonable Fourth Amendment search, and reverse the order of the trial court.

The State argues that consideration of the reasonableness of lifetime SBM in this case is premature, and that N.C. Gen. Stat. § 14-208.40A merely requires a

determination of a defendant's *eligibility* for enrollment in the SBM program. However, we note that under our current statutes, the trial court may order a qualified individual to enroll in the SBM program during the initial sentencing phase, with the monitoring set to begin upon the defendant's release from prison. N.C. Gen. Stat. § 14-208.40A (2019). While it may make more sense in cases such as defendant's, which involve a lengthy prison sentence, for the trial court to hold such hearing after the defendant has served his active sentence and been released from prison, such a change or modification of the law is most appropriately considered and passed upon by our legislature, not the courts.

## 2. 10 Year SBM Order

Defendant further contends that the trial court erred in imposing SBM for an additional 10 years for his offenses against A.B. in violation of N.C. Gen. Stat. § 14-27.30(a). Specifically, defendant argues that because the trial court did not expressly find that defendant "requires the highest possible level of supervision and monitoring" pursuant to N.C. Gen. Stat. § 14-208.40A(d)-(e), it could not require defendant to enroll in SBM.

N.C. Gen. Stat. § 14-208.40A provides that when a defendant is convicted of an offense against a minor or other reportable conviction as defined by N.C. Gen. Stat. § 14-208.6(4), during the sentencing phase,

> (b) . . . the court shall determine whether the offender's conviction places the offender in one of the categories

- 17 -

described in G.S. 14-208.40(a), and if so, shall make a finding of fact of that determination, specifying whether (i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of G.S. 14-27.23 or G.S. 14-27.28, or (v) the offense involved the physical, mental, or sexual abuse of a minor.

. . . .

(d) If the court finds that the offender committed an offense that involved the physical, mental, or sexual abuse of a minor, that the offense is not an aggravated offense or a violation of G.S. 14-27.23 or G.S. 14-27.28 and the offender is not a recidivist, the court shall order that the Division of Adult Correction do a risk assessment of the offender. . . .

(e) Upon receipt of a risk assessment from the Division of Adult Correction and Juvenile Justice pursuant to subsection (d) of this section, the court shall determine whether, based on the Division of Adult Correction and Juvenile Justice's risk assessment, the offender requires the highest possible level of supervision and monitoring. If the court determines that the offender does require the highest possible level of supervision and monitoring, the court shall order the offender to enroll in a satellite-based monitoring program for a period of time to be specified by the court.

N.C. Gen. Stat. § 14-208.40A(b), (d), (e) (2019).

In the present case, the trial court found that defendant had been convicted of a sexually violent offense or an attempt to commit such an offense, but had not been classified as a sexually violent predator or recidivist, and the offense was not an

aggravated offense. The trial court further made oral findings that the offense did not involve the physical, mental, or sexual abuse of a minor. However, in its written order, the trial court checked box 5(a) of the Judicial Findings and Order for Sex Offenders form indicating that the offenses *did* involve the physical, mental, or sexual abuse of a minor. Additionally, the trial court gave verbal orders that

> pursuant to its finding in 5(a) [that the offenses did involve the physical, mental, or sexual abuse of a minor] and based on the risk assessment under the Division of Adult and Juvenile Services and the additional findings, which include the nature of the offense, the age of the children, the relation of the defendant to the victim, the Court is going to require that the defendant be subject to an additional period of satellite-based monitoring for a period of ten years.

The factual evidence against defendant that was considered by the court also lends support to such a finding.

Defendant further makes much of the fact that the trial court did not check box 2(c)(i)(a) in the Order indicating that, based on the risk assessment, "the defendant requires the highest possible level of supervision and monitoring." We first note that though defendant was assessed as low risk, the trial court nevertheless retained the authority to impose SBM. *See State v. Morrow*, 200 N.C. App. 123, 131-32, 683 S.E.2d 754, 761 (2009) (holding that the trial court may override a low or moderate risk rating based on the totality of the evidence). Moreover, defendant ignores the fact that though the trial court neglected to check the box, it did write on

the 2(c)(i)(a) line that the SBM period would be "10 years." Thus, the trial court appears to have simply committed a clerical error, a mistake which may easily be remedied upon remand by this Court. Though defendant further argues the State failed to present any evidence in support of a finding that he required the "highest possible level of supervision and monitoring," in ordering SBM the trial court properly considered the totality of the circumstances, "includ[ing] the nature of the offense, the age of the children, [and] the relation of the defendant to the victim." In addition, unlike the thirty-year SBM order we considered in *Griffin*, ten years is not "significantly burdensome and lengthy," especially given that defendant will already be subject to post-release supervision by the State for half of that time period. Accordingly, we find no reversible error, but remand to correct the clerical error.

III.    Conclusion

For the foregoing reasons, we find no error with respect to the guilt phase of the trial and affirm in part and reverse in part the judgments of the trial court with respect to satellite based monitoring for life. We further remand for correction of the clerical error in the judgment with respect to satellite based monitoring for 10 years.

NO ERROR IN PART, AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Judge DIETZ concurs with respect to the criminal judgment and concurs in the result with respect to the civil judgments.

Judge BERGER concurs with respect to the criminal judgment and concurs in the result with respect to the civil judgments with a separate opinion with which Judge Dietzs concurs.

.

No. COA19-1099 *State v. Thompson*

BERGER, Judge, concurring in separate opinion.

I concur with Issue A, and concur in result only with the remainder of the opinion.

The lead opinion declines to examine preservation of Defendant's Fourth Amendment argument because the State conceded the issue was preserved pursuant to *State v. Lopez*, 264 N.C. App. 496, 826 S.E.2d 498 (2019) and *State v. Griffin*, 260 N.C. App. 629, 818 S.E.2d 336 (2018). However, neither *State v. Lopez*, nor the State's concession, are binding on this Court.[3]

Rule 10 of the Rules of Appellate Procedure requires that

> [i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C. R. App. P. 10(a).

"[I]n order for an appellant to assert a constitutional or statutory right on appeal, the right must have been asserted and the issue raised before the trial court." *State v. McDowell,* 301 N.C. 279, 291, 271 S.E.2d 286, 294 (1980) (citation omitted).

---

[3] In State v. Griffin, this Court determined that the defendant preserved his Fourth Amendment argument when he argued during the SBM hearing that the "level of intrusion was not warranted." Griffin, 260 N.C. App. at 632-33, 818 S.E.2d at 339 (quotation marks omitted). Here, unlike Griffin, Defendant made no argument concerning the reasonableness of the search. Defendant simply argued that he should not be required to be monitored based on the facts of the case.

"[I]n conformity with the well[-]established rule of appellate courts, we will not pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the court below." *State v. Jones*, 242 N.C. 563, 564, 89 S.E.2d 129, 130 (1955) (citation omitted). Further, "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal, not even for plain error[.]" *State v. Gobal,* 186 N.C. App. 308, 320, 651 S.E.2d 279, 287 (2007) (citations omitted), *aff'd,* 362 N.C. 342, 661 S.E.2d 732 (2008).

*Lopez* conjured new rules for preservation of Fourth Amendment challenges to SBM, which the lead opinion follows here. One of the *Lopez* rules for preservation states that if the State initiates a reasonableness inquiry, *which it must do in every SBM case*, the constitutional challenge is automatically preserved, even if the defendant does not object. *Lopez*, 264 N.C. App. at 514-15, 826 S.E.2d at 510. The *Lopez* panel reasoned that the defendant's constitutional issue was preserved because the State had the "opportunity to satisfy its burden" and "the trial court ha[d] the opportunity to rule on it." *Id.* at 514, 826 S.E.2d at 510.

*Lopez* flies directly in the face of Rule 10 and long-standing precedent from the Supreme Court of North Carolina cited above. Thus, *Lopez* should not bind our analysis and should be viewed as an outlier. Our Supreme Court has warned that failure to comply with the Rules of Appellate Procedure "is not only discreditable to the administration of public justice, but it leads eventually to confusion and wrong[.]"

*Spence v. Tapscott*, 92 N.C. 576, 578 (1885). *Lopez* will do just that, and could ultimately gut preservation requirements for all constitutional arguments.

Here, Defendant did not preserve his Fourth Amendment argument. Ordinarily, this should end the inquiry. *See State v. Bishop*, 255 N.C. App. 767, 805 S.E.2d 367 (2017). However, "the law governing imposition of satellite-based monitoring has been anything but settled." *State v. Helms*, No. COA19-955, 2020 WL 4778169, at \*5 (N.C. Ct. App. Aug. 18, 2020) (unpublished). As in *Helms*, "after the monitoring orders in this case were entered, this Court issued its opinion in *State v. Gordon*, ___ N.C. App. ___, 840 S.E.2d 907 (2020)." *Id.* at \* 5.

In *Gordon*, our Court held that the trial court's imposition of SBM at sentencing was unreasonable under the Fourth Amendment because the State "failed to meet its burden of establishing that lifetime satellite-based monitoring following Defendant's eventual release from prison is a reasonable search[.]" *State v. Gordon*, ___ N.C. App. at ___, 840 S.E.2d at 914. Such is the case here.

Because Defendant did not have the benefit of this Court's holding in *Gordon* at the time SBM was imposed, Defendant could not have properly preserved his constitutional argument for appellate review.

Judge DIETZ concurs.

3